UNITED STATES DISTRCT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LATRELL GILLETT, individually and on behalf of
all others similarly situated,

               Plaintiff,

       -against-

ZARA USA, INC. and INDITEX USA LLC,

            Defendants.

ECF CASE

Civil Docket No. 20-cv-3734 (KPF)

---

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION

LITTLER MENDELSON, P.C.
Eli Z Freedberg
Emma J. Diamond
900 Third Avenue
New York, New York 10022
(212) 583-9600

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**PAGE**

I.    PRELIMINARY STATEMENT ......................................................... 1

II.   INTRODUCTION AND STATEMENT OF FACTS ......................................... 2

    A.    PLAINTIFFS' ALLEGATIONS CONCERNING THE
        CONDITIONS OF EMPLOYMENT ...................................... 2

III.  LEGAL ARGUMENT ................................................................ 4

    A.    CONDITIONAL CERTIFICATION SHOULD BE DENIED ................. 4

        i.    Legal Standard ................................................. 4

        ii.   Plaintiffs Have Failed to Establish The Existence of "Similarly
            Situated" Individuals All Subject To The Challenged Overtime
            Wage Rate Miscalculation Practice ................................. 6

    B.    THE "RARE AND EXCEPTIONAL" REMEDY OF EQUITABLE
        TOLLING IS NOT JUSTIFIED HERE .................................... 9

    C.    EVEN IF CONDITIONAL CERTIFICATION IS GRANTED, THE
        NOTICE AND DISTRIBUTION PLAN MUST BE FAIR AND
        IMPARTIAL ........................................................12

    D.    THE NOTICE PERIOD SHOULD BE REVISED FROM MAY 14,
        2017 THROUGH THE PRESENT, TO END AT DECEMBER 31,
        2018 ..............................................................13

    E.    THE OPT-IN PERIOD SHOULD BE SIXTY DAYS AT MOST............13

    F.    A NEUTRAL ADMINISTRATOR SHOULD OVERSEE THE
        DISTRIBUTION OF ANY NOTICE......................................14

    G.    REGARDLESS OF WHO DISTRIBUTES THE NOTICE, THE
        PROPOSED NOTICE AND ACCOMPANYING CONSENT
        FORM MUST BE AMENDED TO MORE CLEARLY INFORM
        POTENTIAL OPT-IN PLAINTIFFS OF THEIR RIGHTS TO
        SEPARATE COUNSEL................................................14

    H.    THE NOTICE SHOULD INCLUDE DEFENSE COUNSEL'S
        CONTACT INFORMATION..............................................15

    I.    DISTRIBUTION OF A "REMINDER" NOTICE IS
        UNNECESSARY.......................................................16

IV.   CONCLUSION ...................................................................16

TABLE OF AUTHORITIES

PAGE

## Cases

*Alvarado Balderramo v. Taxi Tours, Inc.*,
No. 15-cv-2181, 2017 WL 2533508 (S.D.N.Y. June 9, 2017) ............................................ 11

*Alvarez v. Schnipper Rests.*,
No. 16-cv-5779, 2017 WL 6375793 (S.D.N.Y. Dec. 12, 2017) .......................................... 13

*Atkinson v. Tele Tech Holdings*,
No. 14-cv-253, 2015 WL 853234 (S.D. Ohio Feb. 26, 2015) ............................................ 10

*Benavides v. Serenity Spa NY*,
166 F. Supp. 3d 474 ......................................................................................................... 15

*Bittencourt v. Ferrara Bakery & Café*,
310 F.R.D. 106 (S.D.N.Y. 2015) ....................................................................................... 15

*Calloway v. AT&T Corp.*,
419 F. Supp. 3d 1031 (N.D. Ill. 2019) ............................................................................. 10

*A.Q.C. ex rel. Castillo v. U.S.*,
656 F.3d 135 (2d Cir. 2011) ............................................................................................. 11

*Castro v. Spice Place, Inc.*,
No. 07 Civ. 4657 (RWS), 2009 WL 229952 (S.D.N.Y. Jan. 30, 2009) ...............................5

*Diaz v. S&H Bondi's Dep't Store*,
No. 10-cv-7676, 2012 WL 137460 (S.D.N.Y. Jan. 18, 2012) ....................................... 14, 15

*Douglas v. Anthem Prods.*,
No. 18-cv-5789, 2019 WL 78988 (S.D.N.Y. Jan. 2, 2019) ............................................... 12

*Foster v. Sitel Op. Corp.*,
No. 19-cv-148, 2020 WL 3485576 (M.D. Tenn. May 22, 2020) ....................................... 10

*Fu v. Mee May Corp.*,
No. 15 Civ. 4549 (KPF), 2016 WL 1588132 (S.D.N.Y. Apr. 20, 2016) ...............................5

*Garcia v. Spectrum of Creations Inc.*,
102 F. Supp. 3d 541 (S.D.N.Y. May 4, 2015) .....................................................................8

*Genesis Healthcare Corp. v. Symczyk*,
569 U.S. 66 (2013) ........................................................................................................... 10

TABLE OF AUTHORITIES
(CONTINUED)

*Gui Zhen Zhu v. Matsu Corp.*,
　424 F. Supp. 3d 253 (D. Conn. 2020) ...............................................................14

*Guillen v. Marshalls of MA*,
　841 F. Supp. 2d 797 (S.D.N.Y. 2012) ................................................................5

*Guzelgurgenli v. Prime Time Specials*,
　883 F. Supp. 2d 340 (S.D.N.Y. 2012) ...............................................................16

*Hoffmann-LaRoche Inc. v. Sperling*,
　493 U.S. 169 (1989)............................................................................................14

*Islam v. LX Ave. Bagels*,
　NO. 18-cv-4895, 2019 WL 5198667 (S.D.N.Y. Sept. 30, 2019)...................12, 15

*J.S. v. Attica Central Schools*,
　No. 00-CV-513S, 2006 WL 581187 (W.D.N.Y. Mar. 7, 2006). Notice ...............14

*Ji v. Jling Inc.*,
　No. 15 CV 4194 (JMA) (SIL), 2016 WL 2939154 (E.D.N.Y. May 19, 2016) .......8

*Jian Guo Yang v. Zhou's Yummy Rest., Inc.*,
　No. 19-CV-5203-CBA-SJB, 2020 WL 2738403 (E.D.N.Y. Apr. 28, 2020) ...........8

*Knox v. John Varvatos Enters.*,
　282 F. Supp. 3d 644 (S.D.N.Y. 2017) ...........................................................11, 12

*Knox v. Jones Group*,
　208 F. Supp. 3d 954 (S.D. Ind. 2016).................................................................10

*Korenblum v. Citigroup, Inc.*,
　195 F. Supp. 3d 475 (S.D.N.Y. 2016) ..................................................................6

*Lewis v. Wells Fargo & Co.*,
　669 F. Supp. 2d 1124 (N.D. Cal. 2009) ..............................................................14

*Lijun Geng v. Shu Han Ju Rest. II*,
　No. 18-cv-12220, 2019 WL 4493429 (S.D.N.Y. Sept. 9, 2019) .........................15

*Martin v. Sprint/United Mgmt. Co.*,
　No. 15-cv-5237, 2016 WL 30334 (S.D.N.Y. Jan. 4, 2016)............................5, 15

*Mata v. Foodbridge LLC*,
　No. 14 Civ. 8754 (ER), 2015 WL 3457293 (S.D.N.Y. June 1, 2015)...................7

TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*Morris v. Lettire Constr. Corp.*,
    896 F. Supp. 2d 265 (S.D.N.Y. 2012) ........................................................... 15, 16

*Moses v. Griffin Inds.*,
    No. 18-cv-1200, 2020 WL 5813737 (S.D.N.Y. Sept. 30, 2020) ........................ 12, 14, 15, 16

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ........................................................................... 5

*Petersen v. EmblemHealth Inc.*,
    No. 20-cv-2568, 2020 WL 6390655 (E.D.N.Y. Oct. 27, 2020) ........................... 15

*Pettenato v. Beacon Health Options*,
    425 F. Supp. 3d 264 (S.D.N.Y.2019) ............................................................... 11

*Princeton Univ. v. Schmid*,
    455 U.S. 100 (1982) ...................................................................................... 9

*Qiang Lu v. Purple Sushi, Inc.*,
    447 F. Supp. 3d 89 (S.D.N.Y. 2020) ............................................................... 12

*Ratcliffe v. Food Lion, LLC*,
    No. 18-cv-1177, 2020 WL 1987286 (M.D. Tenn. Apr. 27, 2020) ......................... 16

*Realite v. Ark Rests. Corp.*,
    7 F. Supp. 2d 303 (S.D.N.Y. 1998) ................................................................. 5

*Roberts v. TJX Cos.*,
    No. 13-13142, 2017 WL 1217114 (D. Mass. Mar. 31, 2017) .............................. 10

*Romero v. H.B. Auto. Grp.*,
    No. 11 Civ. 386 (CM), 2012 WL 1514810 (S.D.N.Y. May 1, 2012) ..................... 5

*Ruder v. CWL Invs.*,
    No. 16-cv-4460, 2017 WL 3834783 (D. Ariz. July 27, 2017) .............................. 10

*Rule v. S. Indus. Mech. Maint. Co.*,
    No. 16-cv-1408, 2017 WL 4276936 (W.D. La. Aug. 22, 2017) ........................... 10

*Sanchez v. JMP Ventures*,
    No. 13 Civ. 7264 (KBF), 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014) ................... 5

*Sanchez v. Santander Bank*,
    No. 17-cv-5775, 2019 WL 6050738 (D. N.J. Nov. 15, 2019) .............................. 10

TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*Sanchez-Rosa v. Municipality of San Juan*,
    No. 18-cv-1558, 2020 WL 6286503 (D.P.R. Oct. 27, 2020)................................10

*Scott v. Chipotle Mexican Grill*,
    954 F.3d 502 (2d Cir. 2020) .......................................................................4, 5

*Tamay v. Mr. Kabob Rest.*,
    No. 15-cv-5935, 2016 WL 205456 (S.D.N.Y. Jan. 15, 2016) ............................13

*Tanski v. Avalonbay Cmty.*,
    No. 15-cv-6260, 2017 WL 10858910 (E.D.N.Y. Mar. 31, 2017) ........................16

*Taylor v. Pilot Corp.*,
    No. 14-cv-2294, 2018 WL 10550646 (W.D. Tenn. Mar. 8, 2018) ......................10

*U.S. v. Cook*,
    795 F.2d 987 (Fed. Cir. 1986) ......................................................................10

*Uraga v. Amici 519 LLC*,
    No. 17-cv-3547, 2018 WL 3579850, at *7 (S.D.N.Y. July 25, 2018)..................12

*Wallace v. Kato*,
    549 U.S. 384 (2007)....................................................................................11

*Zai You Zhu v. Pmeo Japanese Grill & Sushi*,
    No. 17-cv-3521, 2018 WL 6531592 (S.D.N.Y. Dec. 11, 2018) ..........................15

*Zerilli-Edelglass v. New York City Transit Auth.*,
    333 F.3d 74 (2d. Cir. 2003) .........................................................................11

*Zhongle Chen v Kicho Corp.*,
    No. 18-cv-7412, 2020 WL 1900582 (S.D.N.Y. Apr. 17, 2020) ....................15, 16

**Statutes**

29 U.S.C. §§ 201 *et seq.*........................................................................................2

29 U.S.C. § 216(b)..................................................................................................4

Fair Labor Standards Act ("FLSA") .................................................................*passim*

New York Labor Law ("NYLL")........................................................................1, 2

## I.        PRELIMINARY STATEMENT

Plaintiff Latrell Gillett ("Gillett") filed this Action against two corporate defendants, Zara USA, Inc. ("Zara") and Inditex USA, LLC ("Inditex") (collectively, "Defendants"), alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Subsequently, Alex Swinton ("Swinton") and Royale Adams ("Adams") opted-into this action as additional plaintiffs (collectively, Gillet, Swinton and Adams are referred to herein as "Plaintiffs"). Collectively, Plaintiffs allege Defendants violated the FLSA by neglecting to incorporate a non-discretionary bonus into their overtime wage rates. Plaintiffs now seek to certify a nationwide collective with respect to this FLSA claim, potentially consisting of over a thousand employees across dozens of states. Plaintiffs also ask the Court to authorize the dissemination of a notice that would invite all of Zara's "stock associates, sales associates, and cashiers" who worked in the past three years to join this putative collective action.

As discussed below, Plaintiffs have not met their conditional certification burden. Plaintiffs have failed to plausibly establish that the same allegedly unlawful policy applied to all members of the collective in at least the following two ways.

First, Plaintiffs have not introduced any evidence that Defendants maintained the allegedly unlawful overtime rate calculation policy throughout and over the entire proposed collective action period. In fact, Zara began eliminating its "global commission" bonus and its "fixed commission" bonus, which are the commissions at issue, beginning on December 31, 2018 and completely eliminated these bonus programs in July of 2019. Because Zara's alleged failure to incorporate bonuses paid out pursuant to the "global commission" and "fixed commission" incentive compensation plans into Plaintiffs' overtime wage rates is the only FLSA violation that Plaintiffs allege in this Action, notice of this lawsuit should not be sent to any of Defendants' employees who began work after the date that Zara began eliminating these bonus plans.

Second, Plaintiffs have failed to establish that Defendants maintained a policy that affected *all* members of the putative collective that required them to work more than 40 hours a week. In other words, if a particular employee did not work any overtime hours during the collective period, then no violation of the FLSA could have occurred with respect to that employee, as overtime wage rate miscalculations could never have been made with respect to him or her. By failing to establish that Defendants had a policy requiring all members of the putative collective to work more than 40 hours in a week, Plaintiffs have failed to establish that they are similarly situated to each member of the putative collective as presently defined. Accordingly, Defendants respectfully request that the Court deny Plaintiffs' request for conditional class certification.

## II.     INTRODUCTION AND STATEMENT OF FACTS

### A.     PLAINTIFFS' ALLEGATIONS CONCERNING THE CONDITIONS OF EMPLOYMENT

Plaintiff Gillett commenced this action on May 14, 2020 alleging, among other things, that Defendants failed to pay overtime pay for hours worked in excess of 40 per workweek, and that Defendants failed to pay Plaintiffs the premium overtime wages at a rate of 1.5 times their regular rate of pay, including commission – both, allegedly, in violation of the "FLSA," 29 U.S.C. §§ 201 *et seq.* and the NYLL (Complaint, Dkt. No. 1 ("Compl."), ¶¶ 61-62). Opt-in Plaintiffs Swinton and Adams joined the lawsuit after it was initially filed.

The three named Plaintiffs worked for Defendants in different Zara stores, in different positions, all located in New York City. Plaintiff Gillett worked as a "stock associate," from March 2018 – August 2019, at two Zara stores, located in Brooklyn and Staten Island, New York.[1] (Plaintiff's Memorandum of Law in support of its Motion for Conditional Certification, Dkt. No.

---

[1] Gillett first worked at Zara's store located at 2655 Richmond Avenue, Staten Island, New York 10314. In October 2018, Gillett transferred to Zara's store located at 5100 Kings Plaza, Brooklyn, New York 11234. (P's Motion, Dkt. No. 27, p. 2).

27 ("P's Motion"), p. 2)  Plaintiff Swinton worked in two Zara stores, both located in Manhattan,[2] and is still presently employed by Zara as a "sales associate."  (P's Motion, Dkt. No. 27, p. 2-3) Plaintiff Adams presently works as a "cashier" and has been employed since January 2015.  Adams has always worked in Manhattan, New York City.[3]

Plaintiffs allege that Defendants failed to correctly calculate their and "all other Hourly Workers" overtime rate to include their non-discretionary commissions. (Compl. ¶¶ 50-54, 59-63). In support of this allegation, Plaintiffs introduced a few pay stubs from just a few pay periods that purport to show that Defendants did not include the commissions into the overtime rates (Compl. ¶ 51; P's Motion, Dkt. 28-5).  Plaintiffs' brief also cites to three documents, the 2018 Report, the 2017 Report, and the 2016 Report that Zara published to describe its commission plans. (*See e.g.*, Pl. Br. at p. 6). However, Plaintiffs, neglect to inform the Court that Zara's fixed commission and global commission incentive compensation plans were eliminated across all Zara location in the United States beginning on December 31, 2018.  (Declaration of Emma Redondo ("Redondo Decl."), ¶¶ 4-8). More specifically, Defendants terminated the fixed commission and global commission incentive compensation plans for all of their New York State stores on December 31, 2018, eliminated the fixed commission and global commission incentive compensation plans for another 22 locations on January 1, 2019, eliminated the fixed commission and global commission incentive compensation plans for another 12 locations on February 1, 2019, and eliminated the fixed commission and global commission incentive compensation plans for its last 48 locations on July 1, 2019. (*Id.*) Notably, neither the pay stubs introduced by Plaintiffs in support of their motion, nor the three "Reports" introduced by Plaintiffs in support of their motion, describe any

---

[2] Swinton worked at the following Zara locations: 666 5th Avenue, New York, New York 10103, 222 Broadway, New York, New York 10038; 503 Broadway, New York, New York, 20012; and 1963 Broadway, New York, New York 10023. (P's Motion, Dkt. No. 27, p. 2-3)

[3] Adams has worked at the following Zara locations: 666 5th Avenue, New York, New York 10103; 500 5th Avenue, New York, New York 10110; and 222 Broadway, New York, New York 10038.

commission policy or plan that was effective after the elimination of the fixed commission and global commission incentive compensation plans.

Furthermore, the pay stubs Plaintiffs submitted in support of their motion demonstrate that Plaintiff Gillett only worked one week of overtime. (P's Motion, Dkt. 28-5). Likewise, there is no evidence submitted that demonstrates that opt-in Plaintiff Adams worked more than 40 hours in a week. (*Id*.) Furthermore, the last pay stub Plaintiffs submitted was for the pay period ending December 29, 2018. *Id*. Again this was because Defendants eliminated their commission plans in March of 2019 and thus eliminated any alleged FLSA violation along with it.

Plaintiffs seek to include all nationwide Hourly Workers in their claims that Defendants failed to pay for all hours worked and at an overtime rate that included alleged non-discretionary commissions. However, in support of this broad putative collective, Plaintiffs submit declarations that purport to reference conversations they had with employees who worked in Zara's New York City locations. Plaintiffs do not allege that they spoke to any out-of-state employees who worked for Defendants. (Gillett Decl., Dkt. No. 25-4, ¶ 9; Adams Decl., Dkt. No. 25-6, ¶ 9)). Plaintiffs only other supposed evidentiary support that they are similarly-situated to nationwide employees, is to cite to *anonymous* online reviews, purportedly written by Zara employees, which reference commissions. However, Plaintiffs offer no identifying information regarding the authors of these alleged postings.

## III.  LEGAL ARGUMENT

### A.  CONDITIONAL CERTIFICATION SHOULD BE DENIED

#### i.  Legal Standard

Under the FLSA, plaintiffs may seek conditional certification to proceed as a collective action on behalf of themselves and others "similarly situated." 29 U.S.C. § 216(b). Procedurally, the certification of an FLSA collective involves a two-step process. *Scott v. Chipotle Mexican*

*Grill*, 954 F.3d 502, 515 (2d Cir. 2020). The first step, which is at issue here, requires plaintiffs to make a "factual showing that they and potential opt-in plaintiffs" are similarly situated within the meaning of § 261(b) to warrant the dissemination of notice to the putative collective members. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). This requires plaintiffs to demonstrate that they and the putative collective members "together were victims of a common policy or plan that violated the law." *Scott*, 954 F.3d at 515.

A plaintiff's requisite "factual showing" cannot be satisfied through "unsupported assertions." *Myers*, 624 F.3d 555. Rather, plaintiffs must "provide actual evidence of a factual nexus between [their] situation and the persons [they] claim[] are similarly situated." *Guillen v. Marshalls of MA*, 841 F. Supp. 2d 797, 801 (S.D.N.Y. 2012) (quotation omitted); *see also Fu v. Mee May Corp.*, No. 15 Civ. 4549 (KPF), 2016 WL 1588132, at *2 (S.D.N.Y. Apr. 20, 2016) ("plaintiff must provide some actual evidence of a factual nexus between him and the rest of the class he seeks to represent"). The Court must be satisfied that plaintiff has offered evidence "sufficient to demonstrate that [the named] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998). In this regard, a plaintiff's burden "is not non-existent" and collective "certification is not automatic,"[4] as courts have not hesitated to deny collective certification, or modify and limit the scope of a proposed collective, based on the named plaintiffs' failure to establish the existence of a commonly applied policy or plan violative of the FLSA. *Martin v. Sprint/United Mgmt. Co.*, No. 15-cv-5237, 2016 WL 30334, at *12 (S.D.N.Y. Jan. 4, 2016).

Moreover, plaintiffs are required to satisfy their burden *as to each defendant* named in the case. *See Castro v. Spice Place, Inc.*, No. 07 Civ.4657 (RWS), 2009 WL 229952, at *3 (S.D.N.Y.

---

[4] *Sanchez v. JMP Ventures*, No. 13 Civ. 7264 (KBF), 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014) (*quoting Romero v. H.B. Auto. Grp.*, No. 11 Civ. 386 (CM), 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012))

Jan. 30, 2009) (Plaintiffs must offer evidence that the common policy or plan at issue was "maintained by all [the] defendants"); *Korenblum v. Citigroup, Inc.,* 195 F. Supp. 3d 475, 483, 487 (S.D.N.Y. 2016) (finding that despite plaintiffs' "boilerplate allegations" about Citi being their joint employer, they failed to offer evidence showing "that Citi bore any responsibility for" its contractors' pay practices). A plaintiff's ability to satisfy her collective certification as to one defendant does not also satisfy her burden with respect to other defendants.

**ii.     Plaintiffs Have Failed to Establish The Existence of "Similarly Situated" Individuals All Subject To The Challenged Overtime Wage Rate Miscalculation Practice**

Plaintiffs seek conditional certification of a collective comprised of "all Hourly Workers who work or have worked at Zara owned and operated Defendants from September 14, 2017 to the present" (Doc. 25-1 at 19). However, Plaintiffs have failed to demonstrate that this group was subject to a common policy or plan that violated the FLSA. As a result, the certification of their presently-defined collective would result in notice being disseminated to an overly broad collection of persons, only some of whom may be entitled to opt-into this case.

To begin with, Plaintiffs' proposed collective is vastly overbroad. Plaintiffs claim Defendants failed to properly include bonuses in employees' overtime wage rate calculations. But Defendants ceased paying the bonuses at issue pursuant to its fixed commission and global commission incentive compensation plans beginning on December 31, 2018 and completed its withdrawal from these fixed commission and global commission incentive compensation plans by July of 2019. Redondo Decl.", ¶¶ 4-8. Accordingly, even assuming *arguendo* the existence of some policy or plan under which those bonuses should have been—but were not—included in the overtime wage rate calculations for Defendants' hourly rate workers, that assumed policy or plan ceased to exist in between December of 2018 and July of 2019 with the cessation of the payment of such bonuses for everyone. Hourly rate workers hired after March 2019 would, therefore, never

6

have been subjected to that assumed policy or plan, even if they worked overtime and qualified for payment of overtime wages. Yet, the proposed collective definition would include such workers within its scope, creating the scenario where notice would be disseminated to a group concerning claims and rights that they do not commonly share, as the recipients of that notice would include both injured and non-injured persons.

Further complicating the matter, Plaintiffs have failed to demonstrate that every member of the proposed collective worked overtime. Instead, the collective is simply defined as those persons employed as hourly rate workers by Defendants on or after September 14, 2017. However, only those hourly rate workers who were employed prior to March 2019, ***and worked some number of overtime hours***, could ever have been affected by a policy or plan to omit their bonus payments from their overtime wage rate calculations. Nevertheless, Plaintiffs make no effort to evidence—let alone even allege—that all members of their proposed collective worked overtime hours. This is not some purely speculative defense—even within their own boilerplate, nearly verbatim declarations, Plaintiffs concede they infrequently worked overtime, and only when they did so were they allegedly subject to the miscalculation of their overtime wage rates based on Defendants' claimed failure to incorporate their bonuses into the overtime wage rate calculations (Doc. 25-4 (Gillet Decl.) at ¶¶ 6-7; Doc. 25-5 (Swinton Decl.) at ¶¶ 6-7; Doc. 25-6 (Adams Decl.) at ¶¶ 6-7). Therefore, even assuming *arguendo* that there was some overtime wage rate miscalculation policy that "was uniformly applied to" Plaintiffs and Defendants' other hourly rate employees (Doc. 25-4 at ¶ 10), what is critically missing is evidence demonstrating how that policy commonly affected all of Defendants' hourly rate employees. *See e.g., Mata v. Foodbridge LLC,* No. 14 Civ. 8754 (ER), 2015 WL 3457293, at *3 (S.D.N.Y. June 1, 2015) (denying motion for conditional certification where the plaintiff "includes no concrete facts evidencing a common scheme or plan of wage and hour violations for employees engaged in different job functions"

even though his declaration lists "the names and titles of seventeen coworkers-including food preparers, pizza men, counter persons, a cook, a grill man, a juice preparer, a porter, a delivery person, a dishwasher, and a panini preparer"); *Garcia v. Spectrum of Creations Inc.*, 102 F. Supp. 3d 541, 549–50, (S.D.N.Y. May 4, 2015) (limiting certification to only those individuals who performed plaintiffs' specific job positions, because plaintiffs' affirmations "provide[d] no information...about individuals who performed other job functions at defendants' business"). The best Plaintiffs can muster is an allegation that they "observed and worked with other Hourly Workers who worked the same or more hours than [they] did" (Doc. 25-4 (Gillet Decl.) at ¶ 9; Doc. 25-5 (Swinton Decl.) at ¶ 9; Doc. 25-6 (Adams Decl.) at ¶ 9). But that conclusory assertion falls far short of suggesting—let alone demonstrating—that *all* of Defendants' hourly rate employees worked overtime, and were thus potentially impacted by Defendants' alleged overtime wage rate miscalculation policy in the same way as Plaintiffs. *See e.g., Ji v. Jling Inc.*, No. 15 CV 4194 (JMA) (SIL), 2016 WL 2939154, at *4-5 (E.D.N.Y. May 19, 2016) (denying conditional certification when the plaintiff "claims in conclusory fashion that [the defendants] had a 'common policy' of failing to pay overtime pay to non-managerial Showa Hibachi employees" and "fails to provide any details regarding the observations and conversations that form the basis of his conclusion"); *Jian Guo Yang v. Zhou's Yummy Rest., Inc.*, No. 19-CV-5203-CBA-SJB, 2020 WL 2738403, at *3 (E.D.N.Y. Apr. 28, 2020) (Plaintiff failed to provide evidence demonstrating there was a common wage and hour policy that violated the FLSA and applied to all collective members).

At bottom, Plaintiffs' proposed collective is overly broad because it is defined to include hourly rate workers (a) who could never have been impacted by the alleged policy or plan to miscalculate their overtime wage rates because they began working for Defendants after Defendants eliminated their fixed commission and global commission bonus plans between

December of 2018 and July of 2019; and (b) who may never have been affected by the policy or plan because they never personally worked any overtime. Plaintiffs' declaratory testimony concerning their own experiences, coupled with nearly verbatim hearsay testimony, based on their observations and discussions with other hourly rate employees that others may have been similarly affected, does not evidence that the collective is comprised of similarly situated employees. The qualified and limited nature of their testimony also supports the notion the proposed collective is impermissibly defined in overbroad fashion. This is simply not enough to justify conditional certification, and warrant the dissemination of notice that may prove inaccurate and misleading to those recipients who cannot state the same FLSA claims as Plaintiffs themselves.

**B.    THE "RARE AND EXCEPTIONAL" REMEDY OF EQUITABLE TOLLING IS NOT JUSTIFIED HERE**

Plaintiffs request that the FLSA statute of limitations be equitably tolled for the putative collective members from the date of the filing of their original complaint "until such time that they are able to send notice to potential opt-in plaintiffs" (Doc. 25-1 at 24). In other words, Plaintiffs ask the Court to calculate the notice period from the date of filing of Plaintiffs' original complaint, instead of when notice is distributed to any certified collective, so as to add nearly one additional year to the FLSA's three-year limitations period for the potential opt-in plaintiffs. The Court should deny Plaintiffs' request for such extraordinary relief as premature for at least the following two reasons.

First, Plaintiffs' request for equitable tolling on behalf of persons who have not opted-into this action is premature because such individuals have no Article III "case or controversy" before the Court. A federal court cannot give advisory opinions about issues as to which there are not adverse parties before it. *See Princeton Univ. v. Schmid*, 455 U.S. 100, 102 (1982). The putative collective plaintiffs who have not opted into this action but for whom Plaintiffs seek equitable

tolling are not parties before the Court. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) (potential plaintiffs "become parties to a collective action only by filing written consent with the court"). Thus, if the Court were to grant Plaintiffs' request for equitable tolling on behalf of unknown, unnamed potential opt-in plaintiffs, it would be issuing exactly the type of advisory opinion prohibited by Article III's "case or controversy" requirement. *U.S. v. Cook*, 795 F.2d 987, 994 (Fed. Cir. 1986) (vacating tolling order for potential opt-in plaintiffs "as prematurely issued," given that such order applied to persons not yet before the court and thus rendered the order an advisory opinion).[5]   Moreover, because "an unnamed plaintiff does not become a party to an FLSA collective action until the plaintiff 'opts-in' by filing his or her written consent to join it," the "currently-named Plaintiffs do not have standing to bring [a] Motion [for equitable tolling] on behalf of any potential opt-in Plaintiffs." *Taylor v. Pilot Corp.*, No. 14-cv-2294, 2018 WL 10550646, at *2 (W.D. Tenn. Mar. 8, 2018).

---

[5] *See also, e.g.*, *Sanchez-Rosa v. Municipality of San Juan*, No. 18-cv-1558, 2020 WL 6286503, at *5 (D.P.R. Oct. 27, 2020) ("Courts have repeatedly found 'that granting equitable tolling for hypothetical opt-in plaintiffs would constitute an impermissible advisory opinion.'") (quoting *Ruder v. CWL Invs.*, No. 16-cv-4460, 2017 WL 3834783, at *2 (D. Ariz. July 27, 2017); *Foster v. Sitel Op. Corp.*, No. 19-cv-148, 2020 WL 3485576, at *4 (M.D. Tenn. May 22, 2020) (denying request for equitable tolling in connection with FLSA collective certification, noting that the court "simply cannot grant relief to a party not yet before the Court. To do so would constitute an impermissible advisory opinion."); *Calloway v. AT&T Corp.*, 419 F. Supp. 3d 1031, 1037-38 (N.D. Ill. 2019) ("[S]ome courts have held that any decision on equitable tolling as it applies to putative plaintiffs would amount to an advisory opinion. The Court agrees: it is not possible to decide whether equitable tolling applies to plaintiffs not yet in the case.") (citations omitted); *Sanchez v. Santander Bank*, No. 17-cv-5775, 2019 WL 6050738, at *8 (D. N.J. Nov. 15, 2019) (denying request for equitable tolling from time FLSA claims were first asserted in case through date of conditional collective certification because "[t]he potential opt-in Plaintiffs are not before the Court," such that "any decision as to them would constitute an impermissible advisory opinion"); *Rule v. S. Indus. Mech. Maint. Co.*, No. 16-cv-1408, 2017 WL 4276936, at *1 (W.D. La. Aug. 22, 2017) ("[P]laintiffs' equitable tolling argument is contingent on a future event that may never occur. Until such time, plaintiffs' motion for equitable tolling is premature and not ripe for decision."); ("The Court agrees that granting equitable tolling for hypothetical opt-in plaintiffs would constitute an impermissible advisory opinion."); *Roberts v. TJX Cos.*, No. 13-13142, 2017 WL 1217114, at *8 (D. Mass. Mar. 31, 2017) (denying motion for equitable tolling as premature at the conditional certification stage because of "the extraordinary nature of equitable tolling" and the possibility "that no putative plaintiffs whose claims are time-barred [may] ultimately elect to opt-in"); *Knox v. Jones Group*, 208 F. Supp. 3d 954, 967 (S.D. Ind. 2016) ("And contrary to Plaintiffs' assertion that courts routinely grant this type of motion, preliminary equitable tolling is not standard practice in FLSA collective actions and is generally considered an advisory opinion."); *Atkinson v. Tele Tech Holdings*, No. 14-cv-253, 2015 WL 853234, at *10-11 (S.D. Ohio Feb. 26, 2015) ("[T]he Court finds that Plaintiffs' motion, seeking to equitably toll the FLSA claims of the potential opt-in plaintiffs, is premature, and the Court lacks jurisdiction to grant the requested equitable relief at this time…. Once the Notice has been sent and the opt-in period is closed, individual opt-in plaintiffs may file motions to equitably toll their claims, if circumstances so justify.").

Second, even if Plaintiffs had standing to seek equitable tolling on behalf of non-parties (which they do not), equitable tolling would still be inappropriate at this time. Under the FLSA, "notice should generally be directed to those employed within three years of the date of the mailing of the notice," *not the filing of the complaint*, because the FLSA's "three-year statute of limitations period for willful FLSA violations runs for each individual plaintiff until that plaintiff consents to join the action." *Pettenato v. Beacon Health Options*, 425 F. Supp. 3d 264, 283 (S.D.N.Y.2019). Although this limitations period may be equitably tolled, it is "a rare remedy to be applied in unusual circumstances, not [as] a cure-all for an entirely common state of affairs." *Wallace v. Kato*, 549 U.S. 384, 396 (2007). In the Second Circuit, "equitable tolling is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d. Cir. 2003) (internal quotations, alternations and citations omitted). Accordingly, each "litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *A.Q.C. ex rel. Castillo v. U.S.*, 656 F.3d 135, 144 (2d Cir. 2011) (quotation omitted). The focus of this inquiry is not "with the diligence of a plaintiff who has already timely filed a claim, but rather with the diligence of a[n opt-in] plaintiff who is seeking the application of the doctrine." *Knox v. John Varvatos Enters.*, 282 F. Supp. 3d 644, 658 (S.D.N.Y. 2017).

Because determining "[w]hether tolling applies to the claims of potential opt-in plaintiffs is a highly factual issue that depends on what and when a plaintiff knew or should have known— an inquiry that is simply impossible to conduct when opt-in plaintiffs and the facts specific to them have not yet been revealed," *Alvarado Balderramo v. Taxi Tours, Inc.*, No. 15-cv-2181, 2017 WL 2533508, at *5 (S.D.N.Y. June 9, 2017), this Court has frequently concluded that the issue of equitable tolling should be resolved after expiration of the opt-in period, based on the individual

circumstances of opt-in plaintiffs.[6]   And because the inquiry necessitates "individualized showings," requests "to grant blanket equitable tolling"—such as Plaintiffs seek here—are highly disfavored. *Knox*, 282 F. Supp. 3d at 660; *accord Douglas v. Anthem Prods.*, No. 18-cv-5789, 2019 WL 78988, at *5 (S.D.N.Y. Jan. 2, 2019) ("Whether tolling is appropriate is best addressed on an individual basis. Accordingly, the Court declines to toll the statute of limitations for all prospective plaintiffs at this time, but prospective members of the collective may move for tolling, as needed, on an individual basis.") (citations omitted).

### C.   EVEN IF CONDITIONAL CERTIFICATION IS GRANTED, THE NOTICE AND DISTRIBUTION PLAN MUST BE FAIR AND IMPARTIAL

Even if the Court conditionally certifies an FLSA collective that includes claims against Defendants (and it should not, as explained *supra*), Plaintiffs' proposed notice and distribution plan are neither fair nor impartial, and require revision.   While Defendants summarize some of their major objections below, if the Court finds that notice should issue, the Court should order the parties to confer in an attempt to agree upon the content, form and distribution of the notice and, to the extent the parties are unable to reach agreement, brief any outstanding issues for resolution by the Court. *See Douglas v. Anthem Prods.*, No. 18-cv-5789, 2019 WL 78988, at *5 (S.D.N.Y. Jan. 2, 2019) ("The Court will not rule on the balance of the parties' requests regarding the form of notice and means of distribution.   The parties are ordered to confer and to attempt to resolve any

---

[6] *See, e.g., Moses v. Griffin Inds.*, No. 18-cv-1200, 2020 WL 5813737, at *6 (S.D.N.Y. Sept. 30, 2020) (in denying equitable tolling at conditional certification stage, noting that "[i]f it later becomes apparent that equitable tolling arguments apply to individual plaintiffs who have actually opted into this litigation, the Court can address those issues at the second stage of certification."); *Qiang Lu v. Purple Sushi, Inc.*, 447 F. Supp. 3d 89, 98 (S.D.N.Y. 2020) (denying request for equitable tolling at conditional certification stage: "[s]hould equitable tolling issues arise in this case as to particular plaintiffs, the Court will timely address those issues as necessary."); *Uraga* v. Amici 519 LLC, No. 17-cv-3547, 2018 WL 3579850, at *7 (S.D.N.Y. July 25, 2018) ("Should equitable tolling issues arise as to an opt-in plaintiff after conditional certification …, the Court will then consider tolling."); *Islam v. LX Ave. Bagels*, NO. 18-cv-4895, 2019 WL 5198667, at *9 (S.D.N.Y. Sept. 30, 2019) (concluding that equitable tolling would be addressed "at the second stage of certification" because plaintiffs failed to provide "details as to any individual potential opt-in plaintiff who intends to join the collective but who risks becoming time-barred or has been prevented in some extraordinary way from exercising his rights").

remaining issues …. [and] jointly submit a revised proposed notice and a letter outlining any points of disagreement"); *Alvarez v. Schnipper Rests.*, No. 16-cv-5779, 2017 WL 6375793, at *6 (S.D.N.Y. Dec. 12, 2017) (same); *Tamay v. Mr. Kabob Rest.*, No. 15-cv-5935, 2016 WL 205456, at *2 (S.D.N.Y. Jan. 15, 2016) (same).

### D.   THE NOTICE PERIOD SHOULD BE REVISED FROM MAY 14, 2017 THROUGH THE PRESENT, TO END AT DECEMBER 31, 2018

In their motion, Plaintiffs request that notice be sent all hourly workers "who worked or have worked at Zara owned or operated by Defendants from September 14, 2017 to the present (Doc. 25-1 at 19). However, practical considerations support the modification of any notice period, should conditional certification be granted by the Court. As explained *supra*, Defendants ceased paying the bonuses pursuant to the global commission and fixed commission bonus plans at issue between December 31, 2018 and July 1, 2019. Therefore, any hourly worker employed by Defendants after these plans were terminated could never have been subject to overtime wage rate miscalculations based on a failure to incorporate bonus payments from these plans in their overtime rates. Limiting the notice period from "the present" to December 31, 2018 will therefore ensure that any notice disseminated in this case is timely directed those potentially able to state the same sort of FLSA claim as Plaintiffs (depending on whether or not they worked some amount of overtime during the notice and collective periods). Absent such a limitation, notice would be distributed to some persons who cannot plausibly state such a similar claim, potentially resulting in widespread confusion and the dissemination of inaccurate information to the putative collective.

### E.   THE OPT-IN PERIOD SHOULD BE SIXTY DAYS AT MOST

In its current form, the proposed notice confusingly indicates that potential opt-in plaintiffs' consent-to-sue forms must be returned within sixty, and also within ninety, days following the mailing of notice to the collective (Doc. 25-11 at 4). Insofar as Plaintiffs seek an opt-in period

longer than sixty (60) days, their request should be denied because "the existing precedent in this Circuit" calls for an opt-in period of sixty days, absent agreement "between the parties or special circumstances requir[ing] an extended opt-in period." *Gui Zhen Zhu v. Matsu Corp.*, 424 F. Supp. 3d 253, 272 (D. Conn. 2020); *accord Moses*, 2020 WL 5813737 at *5 (denying request for 90-day opt-in period, as "courts have coalesced around a standard 60-day notice period").

### F.   A NEUTRAL ADMINISTRATOR SHOULD OVERSEE THE DISTRIBUTION OF ANY NOTICE

If the Court determines that notice should issue, a neutral third-party administrator should oversee the distribution of the notice. Doing so will protect the privacy of putative collective members, and prevent intrusive communications from counsel. *See J.S. v. Attica Central Schools*, No. 00-CV-513S, 2006 WL 581187, at *7 (W.D.N.Y. Mar. 7, 2006). Notice should not amount to encouragement to join suit, and courts have a substantial interest in managing communications with potential plaintiffs to avoid "the potential for misuse of the class device, as by misleading communications . . . ." *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 169, 171, 174 (1989). To that end, courts have recognized the value of using an independent third-party administrator to provide notice to potential class members. *See Attica,* 2006 WL 581187, at *7; *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1130 (N.D. Cal. 2009).

### G.   REGARDLESS OF WHO DISTRIBUTES THE NOTICE, THE PROPOSED NOTICE AND ACCOMPANYING CONSENT FORM MUST BE AMENDED TO MORE CLEARLY INFORM POTENTIAL OPT-IN PLAINTIFFS OF THEIR RIGHTS TO SEPARATE COUNSEL

Moreover, the notice and consent form should both be amended to more clearly indicate that potential opt-in plaintiffs can choose their own counsel. *See Diaz v. S&H Bondi's Dep't Store*, No. 10-cv-7676, 2012 WL 137460, at *7 (S.D.N.Y. Jan. 18, 2012). In its current form, the notice and consent form implicitly endorses Fitapelli & Schaffer, LLP by suggesting that Plaintiffs will be exempt from paying any attorneys' fees ("Plaintiff's counsel is handling this matter on a

contingency basis") if represented by them, and also by impermissibly intertwining potential opt-in plaintiffs' consent to sue with his or her designation of Fitapelli & Schaffer, LLP as his or her counsel-of-record, such that it is impossible for a potential opt-in plaintiff to do the former without the latter. (See Doc. 25-11 at 7) (requiring each potential opt-in plaintiff to "designate the Named Plaintiff and Fitapelli & Schaffer, LLP to represent me in such lawsuit and to make decisions on my behalf concerning the litigation and settlement."). This is impermissible—the notice and consent form must "communicate potential opt-in plaintiffs' right to obtain counsel other than Plaintiffs' counsel." *Islam v. LX Ave. Bagels*, No. 18-cv-4895, 2019 WL 5198667, at \*10 (S.D.N.Y. Sept. 30, 2019).[7]

## H.   THE NOTICE SHOULD INCLUDE DEFENSE COUNSEL'S CONTACT INFORMATION

The notice should include contact information for Defendants' counsel. *Zhongle Chen v Kicho Corp.*, No. 18-cv-7412, 2020 WL 1900582, at \*10 (S.D.N.Y. Apr. 17, 2020) ("The Court agrees with other 'courts in this Circuit, which have generally concluded' that the contact information of Defendants' counsel 'is appropriate for inclusion in a notice of collective action.'") (quoting *Bittencourt v. Ferrara Bakery & Café*, 310 F.R.D. 106, 118 (S.D.N.Y. 2015)).[8]

---

[7] *See also, e.g.*, *Petersen v. EmblemHealth Inc.*, No. 20-cv-2568, 2020 WL 6390655, at \*2 (E.D.N.Y. Oct. 27, 2020) (ordering FLSA notice and consent form be revised to more clearly disclose "an option for a collective member to choose to proceed in this case *pro se* or with counsel of their own choosing"); *Martin v. Sprint/United Mgmt. Co.*, No. 15-cv-5237, 2016 WL 30334, at \*17 (S.D.N.Y. Jan. 4, 2016) ("Courts frequently approve language clarifying that opt-in plaintiffs are not required to accept plaintiffs' counsel as their own.) (quotation marks omitted); *Morris v. Lettire Constr. Corp.*, 896 F. Supp.2d 265, 274 (S.D.N.Y. 2012) (requiring consent form to "indicate that opt-in plaintiffs' have the right to select their own counsel"); *Diaz v. S&H Bondi's Dep't Store*, No. 10-cv-7676, 2012 WL 137460, at \*7 (S.D.N.Y. Jan. 18, 2012) (ordering conditional certification notice to disclose "that participating plaintiffs may retain their own counsel").

[8] *See also, e.g.*, *Moses*, 2020 WL 5813737, at \*4 (ordering amendment of notice to "include contact information for defense counsel"); *Lijun Geng v. Shu Han Ju Rest. II*, No. 18-cv-12220, 2019 WL 4493429, at \*19 (S.D.N.Y. Sept. 9, 2019) ("[T]o take care to avoid even the appearance of judicial endorsement of the merits of the action," notice of collective action should include defense counsel's contact information) (quotation omitted); *Zai You Zhu v. Pmeo Japanese Grill & Sushi*, No. 17-cv-3521, 2018 WL 6531592, at \*2 (S.D.N.Y. Dec. 11, 2018) ("Courts in this circuit have endorsed the inclusion of defendants' contact information on collective action notices."); *Benavides v. Serenity Spa NY*, 166 F. Supp. 3d 474, 486-87 (same); *Martin*, 2016 WL 30334, at \*17 (noting that "[e]nclosure of [defense counsel contact] information is routine, and it, too, should be included in plaintiffs' Notice").

### I.      DISTRIBUTION OF A "REMINDER" NOTICE IS UNNECESSARY

Defendants object to the use of a "reminder" notice in this case (Doc. 25-11 at 23-24). The opt-in period should be at most sixty (60) days, a position that Plaintiffs largely appear to agree with. Moreover, Plaintiffs have argued here for dissemination of notice by multiple mechanisms, including not only U.S. mail, but also e-mail and text messaging (*Id.* at 19-21). Use of such multiple avenues of notice dissemination, coupled with the relatively short 60-day opt-in period, strongly suggests that sending any "reminder" notice could be perceived as an attempt to take "another bite at the apple," and interpreted as encouragement by the Court to join the lawsuit or a badgering of the putative opt-in plaintiffs. *Morris v. Lettire Constr. Corp.,* 896 F. Supp. 2d 265, 274 (S.D.N.Y. 2012); *Guzelgurgenli v. Prime Time Specials,* 883 F. Supp. 2d 340, 357 (S.D.N.Y. 2012); *Tanski v. Avalonbay Cmty.,* No. 15-cv-6260, 2017 WL 10858910, at *20-21 (E.D.N.Y. Mar. 31, 2017). Moreover, where use of "reminder" notices has been approved, it has been based on a showing of case-specific necessity. *Tanksi,* 2017 WL 10858910, at *21. But the only justification Plaintiffs have offered is the impact of the Covid-19 pandemic, which does not constitute the sort of grounds justifying the use of a "reminder" notice. *Moses,* 2020 WL 5813737, at *6; *accord Ratcliffe v. Food Lion, LLC,* No. 18-cv-1177, 2020 WL 1987286, at *2 n.3 (M.D. Tenn. Apr. 27, 2020) (refusing to extend FLSA opt-in deadline due to the potential impact of the Covid-19 pandemic, and refusing to provide a second notice to the class about the deadline because "[d]uplicative notice poses a risk of suggesting" judicial "encouragement to join the suit or an[] approval of the suit on its merits.").

### IV.    <u>CONCLUSION</u>

Accordingly, in light of the foregoing, Defendants respectfully request that this Court reject plaintiff's motion for conditional collective certification.

Date:  November 12, 2020                              LITTLER MENDELSON, P.C.
       New York, New York

                                           By:   */s/ Eli Z. Freedberg*
                                                 Eli Z. Freedberg
                                                 Emma J. Diamond
                                                 900 Third Avenue
                                                 New York, New York  10022.3298
                                                 212.583.9600

                                                 *Attorneys for Defendants*

17