UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LATRELL GILLETT, *individually and on behalf of others similarly situated*,

Plaintiff,

-v.-

ZARA USA, INC. and INDITEX USA LLC,

Defendants.

20 Civ. 3734 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiffs Latrell Gillett, Alex Swinton, and Royale Adams bring this action for violations of the Fair Labor Standards Act of 1938, Pub. L. No. 75-718, 52 Stat. 1060 (the "FLSA"), *codified as amended at* 29 U.S.C. §§ 201-219, and the New York Labor Law, Consol. Laws 1909, ch. 31 (the "NYLL"), against Defendants Zara USA, Inc. and Inditex USA LLC (collectively, "Defendants"). Plaintiffs allege, *inter alia*, that Defendants failed to compensate hourly workers at the appropriate overtime rate for time worked in excess of 40 hours per week; failed to pay spread of hours compensation under the NYLL; failed to compensate employees on a timely basis; and failed to provide proper wage notices and statements under the NYLL.

Plaintiffs now move for conditional certification under § 216(b) of the FLSA, for authorization to send notice to prospective collective action members, and for certain pre-certification discovery. For the reasons set forth in this Opinion, the motion for conditional certification is granted, but solely for a collective composed of hourly workers employed by Defendants from May 14,

2017, through July 1, 2019.  Additionally, the Court orders that notice be sent to the putative opt-in class, and grants in part Plaintiffs' request for pre-certification discovery.

## BACKGROUND[1]

### A.    Factual Background[2]

#### 1.    The Parties

Plaintiff Gillett was employed as an hourly worker by Defendants at two different New York City-area Zara stores, from around March 2018 to August 16 or 17, 2019, as a "stock associate."  (Compl. ¶¶ 16, 48-49; Gillett Decl. ¶ 2).  Plaintiff Swinton was employed by Defendants at four New York City-area Zara stores from 2015 through at least September 14, 2020, generally as a "sales associate," although he was occasionally "assigned the position of cashier or stock associate."  (Swinton Decl. ¶¶ 2, 12).  Plaintiff

---

[1]    The facts in this Opinion are drawn from the Complaint ("Compl." (Dkt. #1)), and the exhibits attached to the Declaration of Brian S. Schaffer in support of Plaintiffs' motion for conditional class certification ("Schaffer Decl., Ex. [ ]" (Dkt. #28)) including the Declaration of Latrell Gillett ("Gillett Decl." (*id.*, Ex. B)), the Declaration of Alex Swinton ("Swinton Decl." (*id.*, Ex. C)), and the Declaration of Royale Adams ("Adams Decl." (*id.*, Ex. D)).

For ease of reference, the Court refers to Plaintiffs' opening brief as "Pl. Br." (Dkt. #27); Defendants' opposition brief as "Def. Opp." (Dkt. #33); and Plaintiffs' reply brief as "Pl. Reply" (Dkt. #35).  The Court refers to the Reply Declaration of Brian S. Schaffer in further support of Plaintiffs' motion for conditional certification as "Schaffer Reply Decl." (Dkt. #36).

[2]    Plaintiff bears the burden on a § 216(b) motion.  Accordingly, the Court focuses primarily on Plaintiffs' account of the facts at this stage of the litigation.  *See Myers* v. *Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (describing the "modest factual showing" needed for a motion for conditional certification).  Where Defendants offer contrary facts as to whether Plaintiffs are similarly situated to potential opt-in plaintiffs, the Court has noted Defendants' position, but "will grant the plaintiff the benefit of the doubt given the posture of this motion."  *Mendoza* v. *Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *1 n.1 (S.D.N.Y. Sept. 16, 2013) (internal quotation marks and alterations omitted).  Thus, to the extent needed, the Court also looks to the Declaration of Emma Redondo in opposition to Plaintiffs' motion ("Redondo Decl." (Dkt. #34)).

Adams was employed by Defendants at three New York City-area Zara stores from 2015 through at least September 12, 2020, generally as a "cashier," although he was occasionally "assigned the duties of sales associate or stock associate." (Adams Decl. ¶¶ 2, 12).

Plaintiffs allege that Defendants "operate[] over 95 [Zara] stores throughout the United States and employ[] over 5,000 people in the United States[.]" (Compl. ¶ 3). Defendants' Zara stores "sell[] retail clothing and fashion accessories." (*Id.* at ¶ 2). Plaintiffs allege that Defendants' Zara stores "constitute a single integrated enterprise because they share common ownership, common management, and centrally control all [employees]." (Pl. Br. 4 (citing Schaffer Decl., Ex. H (screenshot of Zara's website)); *see also* Compl. ¶¶ 22-23, 27-28). In support of this assertion, Plaintiff Gillett alleges, for example, that "[w]hen [he] worked at different locations, the pay policies remained exactly the same. Furthermore, all of [his] information and benefits remained the same, including [his] employee login credentials to the Zara employee portal, and the paystubs [he] received were identical at all locations." (Gillett Decl. ¶ 3; *see also* Swinton Decl. ¶ 3 (same); Adams Decl. ¶ 3 (same)).

## 2. Defendants' Payment Policies

Plaintiffs allege that they were paid an hourly rate throughout the course of their employment with Defendants, which rate was supplemented by a

"global commission" (the "Commission").  (Gillett Decl. ¶ 4; Swinton Decl. ¶ 4; Adams Decl. ¶ 4).[3]  Plaintiffs understood the Commission to be

> based off store goals or the amount of revenue the store made once a certain target was hit.  Once the store hit their goal, the remaining revenue would be split [among] all … workers being paid per hour, including other cashiers, sales associates, and stock associates.

(Gillett Decl. ¶ 5; *see also* Swinton Decl. ¶ 5; Adams Decl. ¶ 5).  In other words, once an individual store's target revenue was reached, hourly workers began to receive a commission bonus that was calculated based on the number of hours the employee worked during the relevant period (the "Commission Policy"). Plaintiffs allege that when they worked more than 40 hours in a week, they were paid an overtime rate for hours worked in excess of 40 hours.  (Gillett Decl. ¶¶ 6-7; Swinton Decl. ¶¶ 6-7; Adams Decl. ¶¶ 6-7).  However, Plaintiffs allege that Commission compensation was not factored into their overtime rate when they worked more than 40 hours in a week, in violation of the FLSA. (Compl. ¶¶ 5-6, 35, 50-51, 62; Gillett Decl. ¶ 7; Swinton Decl. ¶ 7; Adams Decl. ¶ 7; *see also* Schaffer Decl., Ex. E (pay stubs)).

---

[3]   Emma Redondo, Zara USA Inc.'s Human Resources Director, clarifies that Zara's hourly employees were eligible for two types of commission plans: a "global commission" plan and a "fixed commission" plan.  (Redondo Decl. ¶ 2).  Specifically, "'fixed commission' was paid to employees at a particular Zara retail store only in the first year that store was opened," while "'global commission,' was paid to employees who worked at older stores whose sales metrics have been established over a period of a year of operation." (*Id.* at ¶ 3).  The distinction between the two commission plans is immaterial to resolving the instant motion because the interaction between the payment of commission and Defendants' alleged underpayment of overtime is identical under both plans; the only difference between the plans is the amount of sales that a store needs to satisfy to trigger the payment of commission.  As such, for convenience, the Court refers to both the "global commission" and "fixed commission" as the "Commission," and to Defendants' policy of paying both commissions as the "Commission Policy."

Plaintiffs allege that the Commission Policy applied to all of Defendants'
hourly employees — including sales associates, stock associates, and
cashiers — and that the Commission was "not discretionary." (Gillett Decl.
¶¶ 5, 8, 10, 11; Swinton Decl. ¶¶ 5, 8, 10, 12; Adams Decl. ¶¶ 5, 8, 10, 12).
Plaintiffs further allege that the pay policies they experienced, as well as their
pay stubs, payment information, employee login credentials, and benefits
remained "exactly the same" across the Zara locations at which they were
employed. (Gillett Decl. ¶¶ 3, 8; Swinton Decl. ¶¶ 3, 8; Adams Decl. ¶¶ 3, 8).
They further allege that there was "no discernable difference in the way
commissions were calculated or how ... overtime rate[s] w[ere] calculated"
across the different Zara locations at which they worked (*e.g.*, Swinton Decl.
¶ 8; *see also id.* at ¶¶ 3, 10), such that Defendants maintained a policy or
practice of failing to include the Commission in their calculation of the overtime
rate for all hourly employees (Compl. ¶¶ 61-63). As support for this allegation,
Plaintiffs cite conversations with specific coworkers across multiple New York
City-area Zara stores, wherein they discussed "the commissions we received
and the [payment] policy which was uniformly applied to us[.]" (Gillett Decl.
¶ 10; *see also id.* at ¶¶ 9, 11; Swinton Decl. ¶¶ 9-10; Adams Decl. ¶¶ 9-10).

Emma Redondo, Zara USA Inc.'s Human Resources Director, confirmed
that "several categories of Zara employees including sales associates, stock
associates, cashiers, and other[] types of ... Zara's hourly rate employees were
eligible to receive incentive compensation pursuant to [the Commission Policy],
in addition to their hourly wages." (Redondo Decl. ¶ 2). Redondo further

5

confirmed that the Commission Policy was in use at 98 Zara stores across the United States. (*Id.* at ¶¶ 4-7). However, Defendants assert (and Plaintiffs do not dispute) that the Commission Policy was discontinued as to all of Defendants' U.S. Zara stores in several stages, beginning on December 31, 2018, and ending on July 1, 2019. (*Id.* at ¶¶ 4-8). Accordingly, Defendants' U.S. employees did not receive bonus income pursuant to the Commission Policy at any Zara store after July 1, 2019. (*Id.* at ¶ 8).

**B.    Procedural Background**

Plaintiff Gillett filed his Complaint on May 14, 2020. (Dkt. #1). On August 19, 2020, Alex Swinton filed his consent to become a party plaintiff in this action. (Dkt. #16). By letter dated August 26, 2020, the parties informed the Court that they did not want to proceed with mediation, and instead wanted to litigate Plaintiffs' motion for conditional class certification under § 216(b) of the FLSA. (Dkt. #17). By letter dated September 4, 2020, the parties submitted a proposed briefing schedule on Plaintiffs' anticipated motion and requested that the Court adjourn the initial pretrial conference in the case. (Dkt. #22). By order dated September 8, 2020, the Court granted the parties' requests and adopted their proposed briefing schedule. (Dkt. #23). That same day, Royale Adams filed his consent to become a party plaintiff. (Dkt. #24). Plaintiffs filed their motion for conditional certification and supporting papers on September 14, 2020. (Dkt. #25-28). Defendants filed their opposition papers on November 12, 2020. (Dkt. #33-34). This motion became fully

briefed and ripe for decision when Plaintiffs filed their reply papers on
December 4, 2020.  (Dkt. #35-36).

## DISCUSSION

**A.    Applicable Law**

**1.    The FLSA Generally**

The FLSA permits aggrieved employees to bring collective actions against
their employers for unlawful employment practices.  The statute authorizes
suits "by any one or more employees for and in behalf of himself or themselves
and other employees similarly situated."  29 U.S.C. § 216(b).  Unlike class
actions brought under Federal Rule of Civil Procedure 23, FLSA collective
actions need not satisfy the standards of numerosity, typicality, commonality,
or representativeness.  *Young* v. *Cooper Cameron Corp.*, 229 F.R.D. 50, 54
(S.D.N.Y. 2005); Fed. R. Civ. P. 23(a).  "Also unlike Rule 23, only potential
plaintiffs who 'opt in' by filing written consents to join the collective action can
be 'bound by the judgment or benefit from it.'"  *Mendoza* v. *Ashiya Sushi 5, Inc.*,
No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *2 (S.D.N.Y. Sept. 16, 2013)
(quoting *Gjurovich* v. *Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104
(S.D.N.Y. 2003)).  District courts may, in their discretion, "facilitat[e] notice to
potential plaintiffs of the pendency of the action and of their opportunity to opt-
in as represented plaintiffs."  *Myers* v. *Hertz Corp.*, 624 F.3d 537, 554 (2d Cir.
2010) (internal quotation marks omitted) (quoting *Hoffmann-La Roche Inc.* v.
*Sperling*, 493 U.S. 165, 169 (1989)).

### 2.    Collective Certification Under § 216(b) of the FLSA

The Second Circuit has endorsed a two-step method to certify FLSA collective actions.  *Myers*, 624 F.3d at 555.  At the first step, courts consider whether "to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred."  *Id.* (citations omitted).  At the second step, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs."  *Id.*  This second step "typically occurs after the completion of discovery[.]"  *Bifulco* v. *Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009).  At the latter stage, the court may "'decertify the class or divide it into subclasses, if appropriate.'"  *McGlone* v. *Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) (quoting *Iglesias-Mendoza* v. *La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007)).

Plaintiffs bear a low burden at the first step:  They need only "make a modest factual showing that they and others together were victims of a common policy or plan that violated the law."  *Glatt* v. *Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2015).  Upon such a showing, plaintiffs may send notice to other potential plaintiffs "who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred."  *Myers*, 624 F.3d at 555.  "Because minimal evidence is available at this stage, this determination is made using a 'relatively lenient evidentiary standard.'"  *McGlone*, 867 F. Supp. 2d at 442 (quoting *Mentor* v. *Imperial Parking Sys., Inc.*,

8

246 F.R.D. 178, 181 (S.D.N.Y. 2007)).  "However, certification is not automatic." *Taveras* v. *D & J Real Estate Mgmt. II, LLC*, 324 F.R.D. 39, 41 (S.D.N.Y. 2018).  "Although a plaintiff's factual showing is modest, it cannot be satisfied by unsupported assertions or conclusory allegations." *Id.*

At the first stage, "'the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.'" *Winfield* v. *Citibank, N.A.*, 843 F. Supp. 2d 397, 402 (S.D.N.Y. 2012) (quoting *Cunningham* v. *Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)).  Courts in this District have therefore held that a FLSA collective action may be conditionally certified based upon even a single plaintiff's affidavit.  *See Escobar* v. *Motorino E. Vill. Inc.*, No. 14 Civ. 6760 (KPF), 2015 WL 4726871, at *2 (S.D.N.Y. Aug. 10, 2015) (collecting cases).

**B.   Analysis**

**1.   The Court Will Conditionally Certify a Collective Action**

The FLSA establishes a minimum wage and overtime pay rate. Employers are required to pay at least a minimum wage for each of the first 40 hours worked in a workweek and, for each hour over 40, must pay employees overtime "at a rate not less than one and one-half times the regular rate at which [they are] employed."  29 U.S.C. § 207.  Therefore, under the FLSA, "[o]vertime pay is calculated by applying a multiplier of one and one half to an employee's regular rate of pay.  Generally, the regular rate of pay is determined by dividing his total remuneration for employment ... in any workweek by the total number of hours actually worked by him in that workweek for which such

compensation was paid." *McLean* v. *Garage Mgmt. Corp.*, 819 F. Supp. 2d 332, 339-40 (S.D.N.Y. 2011) (internal quotation marks omitted) (citing 29 U.S.C. § 207(a)(1), (e); 29 C.F.R. §§ 778.107, 778.109).  When an employee receives a bonus, as is alleged here with respect to the Commission, that bonus is included as part of the total remuneration for the purposes of the calculation of overtime payment.  29 C.F.R. § 778.110(b).  Plaintiffs claim that Defendants violated the overtime requirement because Defendants failed to include bonus compensation paid pursuant to the Commission Policy as part of hourly workers' regular rate of pay, and therefore failed to include it in the calculation of Plaintiffs' overtime rate.  (*See* Pl. Br. 6-7).

Plaintiffs seek conditional certification of a broad class of "all pay sales associates, stocks associates, cashiers[,] and all other hourly employees ... who work or worked for Defendants at any time from May 14, 2017 to the present." (*See* Schaffer Decl., Ex. I ("Judicial Notice")).  Defendants raise two primary arguments in opposition to Plaintiffs' motion.  *First*, Defendants argue that because they discontinued the Commission Policy on July 1, 2019, Plaintiffs' request for certification of a class of employees who worked for Defendants after that date is overbroad.  (Def. Opp. 6-7).  *Second*, Defendants argue that Plaintiffs failed to adequately allege that every member of the potential class worked "some overtime hours" and thus the class is overinclusive.  (*Id.* at 7-8). The Court agrees with Defendants in part, and grants conditional certification as to a narrowed opt-in class as discussed below.

10

Plaintiffs have undoubtedly alleged facts specific enough to warrant conditional certification of a class of hourly workers who were employed by Defendants at Zara stores before July 1, 2019.  Plaintiffs allege that they, as hourly employees (*see* Adams Decl. ¶ 2 (cashier); Swinton Decl. ¶ 2 (sales associate); Gillett Decl. ¶ 2 (stock associate)) — were each subject to a single policy whereby Defendants failed to properly calculate their overtime pay rate by omitting bonus compensation paid to them pursuant to the Commission Policy from the calculation of their regular rate of pay, purportedly causing them to be under-paid for overtime worked.  (*See* Gillett Decl. ¶¶ 7-8; Swinton Decl. ¶¶ 7-8; Adams Decl. ¶¶ 7-8; *see also* Schaffer Decl., Ex. E (pay stubs)). Plaintiff have alleged that Defendants' pay policies remained unchanged across Zara stores, and provided observations from their own personal experiences to corroborate this allegation.  (*See* Gillett Decl. ¶¶ 8-11; Swinton Decl. ¶¶ 8-10; Adams Decl. ¶¶ 8-10).  And Defendants have conceded that (i) the Commission Policy at issue here — which Plaintiffs allege led to Defendants' improper overtime compensation scheme — was in effect at Zara stores across the country, not just at those stores located in New York (*see* Redondo Decl. ¶¶ 4-7);[4] and (ii) "several categories of Zara employees, including sales associates,

---

[4]     While Plaintiffs do not offer any sworn declarations from employees outside of New York, Defendants do not argue that New York-based Plaintiffs are differently situated from other of Defendants' employees, nor do they ask the Court to limit conditional certification only to New York employees.  (*See generally* Def. Opp.).  Furthermore, the evidence provided by Plaintiffs as to the uniform nature of Defendants' employment practices, coupled with Defendants' admission that they implemented the Commission Policy across the United States, is sufficient, at this early stage, to satisfy Plaintiffs' modest burden of showing that similarly situated potential opt-in class members exist beyond New York.  Accordingly, on this point, the Court "grant[s] the plaintiff the

stock associates, cashiers, and others types of ... Zara's hourly rate employees were eligible to receive" the Commission when their stores qualified (*id.* at ¶ 2).

Plaintiffs have also specifically named other hourly employees whom they observed or had conversations with about Defendants' practice of undercompensating hourly employees for overtime worked by failing to include compensation paid pursuant to the Commission Policy in employees' regular rates of pay across multiple Zara stores.  (*See* Gillett Decl. ¶¶ 9-11; Swinton Decl. ¶¶ 9-10; Adams Decl. ¶¶ 9-10).  Plaintiffs' declarations provide significant detail by citing: (i) specific employees that Plaintiffs observed working over 40 hours per week; (ii) the substance of the conversations Plaintiffs had with specific coworkers — which conversation addressed the bonuses they received; and (iii) comparisons of pay stubs to determine that the calculation of their overtime rates did not include the Commission.  (*See* Gillett Decl. ¶¶ 3, 8-11; Swinton Decl. ¶¶ 3, 8-10; Adams Decl. ¶¶ 3, 8-10).  This is more than enough to meet the lenient standard that controls at this stage.  *See Islam* v. *LX Ave. Bagels, Inc.*, No. 18 Civ. 4895 (RA) (RWL), 2019 WL 5198667, at *6 (S.D.N.Y. Sept. 30, 2019) (granting conditional certification where plaintiffs "name[d] or otherwise identif[ied] specific employees that were subject to the same unlawful compensation policies" (internal quotation marks omitted)); *Iriarte* v. *Café 71, Inc.*, No. 15 Civ. 3217 (CM), 2015 WL 8900875, at *4 (S.D.N.Y. Dec. 11, 2015) (granting same where plaintiff declared that "he ha[d] personal knowledge from

---

benefit of the doubt given the posture of this motion."  *Ashiya Sushi 5, Inc.*, 2013 WL 5211839, at *1 n.1.

his observations and his conversations with his coworkers that he and all other employees … were victims of Defendant's practices" (internal quotation marks omitted)).

Defendants contend, however, that Plaintiffs' proposed class is overly broad because "Defendants ceased paying the bonuses at issue [*i.e.*, the Commission] … beginning on December 31, 2018 and completed [their] withdrawal from [the Commission] incentive compensation plans by July [1], 2019." (Def. Opp. 6 (citing Redondo Decl. ¶¶ 4-8)).  The Court agrees. Plaintiffs provide no nonconclusory evidence that Defendants continued to implement the Commission Policy beyond July 1, 2019.  (*See generally* Compl.; Pl. Reply).  Plaintiffs do not dispute that Defendants ceased to implement the Commission Policy as of July 1, 2019, nor do they argue that Defendants continued to improperly omit bonus compensation paid pursuant to the Commission Policy from the calculation of overtime rates after July 1, 2019. (*See generally* Pl. Reply).  Furthermore, the pay stubs provided by Plaintiffs as evidence of Defendants' misconduct all pre-date July 1, 2019.  (*See* Schaffer Decl., Ex. E (pay stubs)).  As such, on this record, Plaintiffs fail to establish that similarly situated potential opt-in class members exist for the period beginning on July 1, 2019, to the present.  Accordingly, the time period for this collective action is properly cut-off when Defendants ceased to pay the

Commission — which Commission is at the heart of Plaintiffs' claims — on July 1, 2019.[5]

Additionally, Defendants allege that Plaintiffs have failed to establish that all members of the putative class actually worked overtime hours. (*See* Def. Br. 7-8). Plaintiffs have sufficiently established that there are similarly situated hourly employees who were undercompensated because their overtime rate failed to take the Commission into account. Specifically, Plaintiffs submitted multiple pay stubs that demonstrate that Defendants did not include bonus compensation paid to them pursuant to the Commission Policy in calculating Plaintiffs' overtime pay rates. (*See* Schaffer Decl., Ex. E (pay stubs)).[6] Furthermore, Defendants' objection is essentially a factual dispute regarding the individual differences in the hours worked by Defendants' hourly employees. (*See* Def. Br. 7-8). On a motion for conditional certification, this Court will not "resolve factual disputes, decide substantive issues going to the

---

[5]     At times, Defendants argue that the Court should cut-off the class period on December 31, 2018, when Defendants first began phasing out the Commission Policy, or March 2019, on the theory that employees could not have been subjected to the purportedly improper payment policy after these dates because the Commission Policy had been discontinued. (*See* Def. Opp. 6-7). Given that Defendants admit that the Commission Policy continued to be in effect at 48 Zara stores until July 1, 2019 (Redondo Decl. ¶ 7), the Court believes that July 1, 2019, is the correct date at which to limit the class period.

[6]     For example, one pay stub demonstrates that for the pay period of October 21, 2018, to November 3, 2018, Plaintiff Swinton worked 9.72 hours of overtime. During this time, he was paid $15.00 per hour plus commissions of $126.92. Despite the inclusion of this bonus compensation pursuant to the Commission Policy, Swinton's overtime rate was paid at $22.50 per hour, a rate which only calculated one and one-half times the $15.00 hourly rate. (Schaffer Decl., Ex. E at 23 (pay stubs)). Similarly, another pay stub established that for the pay period of June 17, 2018, to June 30, 2018, Plaintiff Gillett worked 8.85 hours of overtime. During this time, he was paid $13.00 per hour plus commissions of $103.27. Despite the inclusion of this bonus compensation pursuant to the Commission Policy, Gillett's overtime rate was paid at $19.50 per hour, a rate which only calculated one and one-half times the $13.00 hourly rate. (*Id.* at 2).

14

ultimate merits, or make credibility determinations." *See Bhumithanarn* v. *22 Noodle Mkt. Corp.*, No. 14 Civ. 2625 (RJS), 2015 WL 4240985, at *3 (S.D.N.Y. July 13, 2015) (quoting *Lynch* v. *United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)).  Therefore, Defendants' fact-based argument that the putative class is overbroad because it may include some hourly workers who did not in fact work overtime hours is inappropriate at this stage of the litigation.

In sum, because the Court is persuaded that Plaintiffs have met their modest burden on conditional certification, the Court conditionally certifies a collective action of:

> (i) sales associates, stocks associates, cashiers, and other hourly employees, (ii) who worked for Defendants at any time from May 14, 2017, to July 1, 2019, (iii) at Zara retail stores in the United States, and (iv) who were not paid adequate overtime.

### 2.    The Court Will Order Notice

Having determined that conditional certification of a narrowed subset of the proposed collective action is warranted, the Court turns to questions regarding notice.  The FLSA does not specify the contents of the notice of pending litigation to be provided to potential opt-in plaintiffs.  Instead, it vests the Court with broad discretion to fashion said notice.  *See Delaney* v. *Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009); *Gjurovich*, 282 F. Supp. 2d at 106.  In assessing the adequacy of proposed notice, courts consider whether the notice provides "accurate and timely notice concerning the pendency of the collective action, so that [potential opt-in plaintiffs] can make informed

decisions about whether to participate." *Hoffmann-La Roche Inc.*, 493 U.S. at 170; *see also Delaney*, 261 F.R.D. at 59.

Defendants advance various objections to Plaintiffs' proposed notice. *First*, Defendants object to Plaintiffs' request that the Court equitably toll the statute of limitations in this action. (Def. Opp. 9-12). *Second*, Defendants argue that the notice period should be cut off when Defendants discontinued the Commission Policy. (*Id.* at 13). *Third*, Defendants raise numerous objections to the content of Plaintiffs' proposed notice, and request that the Court order the parties to meet and confer on these issues. (*Id.* at 12-13). *Fourth*, Defendants object to Plaintiffs' proposed distribution of the notice, and ask that the Court order that an independent administrator distribute the notice and deny Plaintiffs' request to post a reminder notice. (*Id.* at 14-16). The Court addresses each dispute in turn, and then discusses Plaintiffs' request for pre-certification discovery.

### a.   Equitable Tolling

To begin, Plaintiffs ask the Court to equitably toll the statute of limitations from the date of the filing of their initial complaint until Plaintiffs send notice to the potential opt-in plaintiffs. (Pl. Br. 18-19). Defendants object, arguing that it is premature to equitably toll the statute of limitations at this stage in the proceedings. (Def. Opp. 9-12). The Court agrees with Defendants. "Because equitable tolling issues often arise as to individual opt-in plaintiffs … , courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that

challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date." *Yap* v. *Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 565 (S.D.N.Y. 2015) (internal quotation marks omitted) (quoting *Gaspar* v. *Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014)); *see also Douglas* v. *Anthem Prods., LLC*, No. 18 Civ. 5789 (VEC), 2019 WL 78988, at *5 (S.D.N.Y. Jan. 2, 2019) (collecting cases and explaining that "[w]hether tolling is appropriate [for potential members of the FLSA collective action] is best addressed on an individual basis"). As such, the Court declines to toll the statute of limitations for all prospective plaintiffs at this time, but prospective members of the collective may move for tolling, as needed, on an individual basis. *Accord Douglas*, 2019 WL 78988, at *5; *Ashiya Sushi 5, Inc.*, 2013 WL 5211839.

### b.   The Notice Period

Having determined that equitable tolling is not warranted at this time, the Court turns to the parties' disagreement over Plaintiffs' proposed notice period. Plaintiffs argue that the proper notice period is three years, as is appropriate where, as here, Plaintiffs allege a willful violation under the FLSA. (Pl. Br. 16; Pl. Reply 7). According to Plaintiffs, a three-year notice period extends from May 14, 2017, to the present. (Pl. Reply 7). Defendants concede that the proper statute of limitations period in this instance is three years, but argue that the notice period should be cut off after Defendants eliminated the Commission. (*See* Def. Opp. 9-13). The Court agrees with the parties that at this stage in the proceedings a three-year statute of limitation applies, and

agrees with Defendants that the notice period should not extend beyond the existence of the purportedly improper overtime payment policy. The Court has limited the opt-in class to hourly employees who worked for Defendants from May 14, 2017, to July 1, 2019, the last date the Commission Policy was in effect. The Court has no reason to believe that discovery into former employees who worked for Defendants outside the class period would "serve the efficiency goal articulated in *Hoffmann*." *Trinidad* v. *Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 564 n.14 (S.D.N.Y. 2013) (citing *Hoffmann-La Roche Inc.*, 493 U.S. at 174). Accordingly, the Court similarly limits the notice period to cover hourly employees who worked for Defendants at any point from May 14, 2017, to July 1, 2019.[7]

### c.   The Content of the Notice

Defendants raise multiple issues with the content of Plaintiffs' proposed notices. (Def. Opp. 12-15). Defendants request, *inter alia*, that the notice include contact information for defense counsel and language that informs opt-ins that they may retain their own counsel. (*Id.*). The Court agrees on both points. *See Slamna* v. *API Rest. Corp.*, No. 12 Civ. 757 (RWS), 2013 WL 3340290, at *5 (S.D.N.Y. July 2, 2013) ("Courts in this Circuit have generally

---

[7]     Defendants assert that the opt-in period should be 60 days. (Def. Opp. 13-14). Plaintiffs do not appear to disagree. (*See generally* Pl. Br.; Pl. Reply). To the extent the parties disagree, courts generally only grant opt-in periods of greater than 60 days "where the period is agreed upon between the parties or special circumstances require an extended opt-in period." *Whitehorn* v. *Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 452 (S.D.N.Y. 2011) (citations omitted); *see also Fa Ting Wang* v. *Empire State Auto Corp.*, No. 14 Civ. 1491 (WFK), 2015 WL 4603117, at *11 (E.D.N.Y. July 29, 2015) (collecting cases). Here, there are no exceptional circumstances that might justify an extended period, and as such the Court orders that the opt-in period be 60 days.

concluded that such [contact] information is appropriate for inclusion in a notice of collective action"); *Whitehorn* v. *Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450-51 (S.D.N.Y. 2011) ("The Notice should also be amended, as Defendants request, to state that participating plaintiffs may retain their own counsel."). Defendants further request that the Court order the parties to meet and confer regarding the content of the notices. (Def. Opp. 12-13). Plaintiffs have submitted a revised proposed judicial notice to address some of these objections. (*See* Schaffer Reply Decl., Ex A). Plaintiffs also state they are "open to speaking with Defendants regarding any issues or concerns they may have" as to the content of the notices "in order for them to be resolved without the need for Court intervention." (Pl. Reply 7).

Accordingly, the parties shall meet and confer on the language of the proposed notices. Plaintiffs shall file the revised proposed notices within 14 days from the date of this Opinion. If Defendants still have objections, they may file objections within seven days from the date of Plaintiffs' submission.

### d.   The Form and Method of Distribution

Defendants raise several objections to the form and method of distribution of Plaintiffs' proposed notices. Specifically, Defendants ask that the Court: (i) appoint an independent administrator to distribute the notices, and (ii) deny Plaintiffs' request to distribute a reminder notice. (Def. Opp. 14, 16). As to the first point, in their reply brief, Plaintiffs "consent to hiring a third-party administrator of Plaintiffs' choosing to handle distribution of the consent to join forms, on the condition that the completed forms be returned to

19

Plaintiffs' counsel." (Pl. Reply 7). The parties are directed to meet and confer regarding the selection of an independent administrator and the administrator's role. To the extent the parties cannot agree on the means and method of distribution, they shall promptly raise any outstanding issues with the Court. The parties shall inform the Court of any agreement and/or outstanding objections as to this issue no later than 14 days from the date of this Opinion.

As to the second point, Plaintiffs seek authorization to send a deadline reminder letter during the opt-in period, though they do not specify at what point during the period this reminder letter will be sent. (Pl. Br. 17-18). Defendants argue that Plaintiffs' proposed reminder form is unnecessary and that it will be interpreted "as encouragement by the Court to join the lawsuit or a badgering of the putative opt-in plaintiffs." (Def. Opp. 16). The Court will permit such a letter, in accordance with the reasoning of other courts in this District. *See, e.g.*, *Chhab* v. *Darden Rests., Inc.*, No. 11 Civ. 8345 (NRB), 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) ("Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice is appropriate." (collecting cases)); *see also Racey* v. *Jay-Jay Cabaret, Inc.*, No. 15 Civ. 8228 (KPF), 2016 WL 3020933, at *11 (S.D.N.Y. May 23, 2016) (same); *Michael* v. *Bloomberg L.P.*, No. 14 Civ. 2657 (TPG), 2015 WL 1810157, at *4 (S.D.N.Y. Apr. 17, 2015) (same); *Morris* v. *Lettire Const. Corp.*, 896 F. Supp. 2d

265, 275 (S.D.N.Y. 2012) (same) (citing *Harris* v. *Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 847 (N.D. Cal. 2010)).[8]

### e.    Pre-Certification Discovery

Finally, the Court considers Plaintiffs' request for pre-certification discovery.  Specifically, Plaintiffs request the production of a list in a computer-readable format of names, last known addresses, telephone numbers, e-mail addresses, work locations, and dates of employment for all putative class members.  (Pl. Br. 17).  Plaintiffs also seek the social security numbers "only for those individuals whose consent forms are returned undeliverable."  (*Id.*).

Defendants have raised no objections to Plaintiffs' discovery request. (*See generally* Def. Opp.).  Nevertheless, the Court takes issue with the request for social security numbers.  The Court recognizes that in some instances, other courts have permitted the plaintiff to request the social security numbers of putative class members.  *See Patton* v. *Thomson Corp.*, 364 F. Supp. 2d 263, 268 (E.D.N.Y. 2005).  However, the Court believes the greater weight of

---

[8]    Plaintiffs seek leave to distribute notice by mail, e-mail, and text message, arguing that a high turnover rate among employees at Defendants' stores justifies the use of e-mail and text message to distribute notice.  (Pl. Br. 13-15; *see also, e.g.*, Gillett Decl. ¶ 12 (describing high turnover rate)).  Defendants do not object to the use of these methods of distribution.  (*See* Def. Opp. 16).  Accordingly, the Court authorizes distribution of the notice via first class U.S. mail, e-mail, and text message.  *Accord Martin* v. *Sprint/United Mgmt. Co.*, No. 15 Civ. 5237 (PAE), 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016).

Plaintiffs also "request the posting of the notice in conspicuous locations at Zara's stores."  (Pl. Br. 17).  Defendants do not raise any objections to this request.  (*See generally* Def. Opp.).  This request is granted, as "[c]ourts routinely approve the posting of notice on employee bulletin boards and in common employee spaces."  *Ashiya Sushi 5, Inc.*, 2013 WL 5211839, at *9.  However, notice shall not be posted in areas accessible to members of the general public.  *Accord Aguilo* v. *Vails Gate Cleaners Inc.*, No. 18 Civ. 8850 (PMH) (JCM), 2020 WL 3545558, at *8 (S.D.N.Y. June 30, 2020).  Nor does this approval extend to the posting of a reminder letter.

21

authority goes against authorizing the collection of such sensitive information "in the first instance and without a showing that the information is necessary." *See Zaldivar* v. *JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 326-27 (S.D.N.Y. 2016) (collecting cases denying the production of social security numbers).  If Plaintiffs are unable to contact some potential opt-in plaintiffs with the other information they receive from Defendants, Plaintiffs may renew their application for social security numbers.  Otherwise, the Court does not believe the situation necessitates such a step at this time.

Having addressed this concern, and having reviewed the parties' submissions, the Court finds production of all of the requested information, excepting the social security numbers, to be appropriate.  Plaintiffs' request for pre-certification discovery, in accordance with this Opinion, is granted. Plaintiffs request the production of this information on an "expedited" basis, but do not specify a timeframe.  (Pl. Br. 16-17).  Because Plaintiffs do not specify a date for the requested "expedited" production, and because Defendants do not object to this request, the Court orders that the material authorized above be produced within 14 days from the date of this Opinion. *Accord Campos* v. *Lenmar Rest. Inc.*, No. 18 Civ. 12359 (KPF), 2019 WL 6210814, at *6 (S.D.N.Y. Nov. 21, 2019) (explaining that "the more common amount of time given [for pre-certification discovery] is 14 days" (collecting cases)).

**CONCLUSION**

For the reasons set forth above, Plaintiffs' motion is GRANTED, but solely as to hourly employees who worked for Defendants at any time from May 14, 2017, to July 1, 2019.

The parties are ORDERED to meet and confer regarding the language of the proposed notices and the selection of an independent administrator. Plaintiffs shall file the revised proposed notices within 14 days from the date of this Opinion.  If Defendants still have objections, they may file objections within seven days from the date of Plaintiffs' submission.

The parties are ORDERED to meet and confer regarding the selection of an independent administrator to distribute notice to the putative class.  The parties are furthered ORDERED to inform the Court of any agreement and/or outstanding objections as to this issue no later than 14 days from the date of this Opinion.

Defendants are ORDERED to provide Plaintiff, in a computer-readable format, with the names, last known addresses, telephone numbers, e-mail addresses, work locations, and dates of employment for employees within the putative class within 14 days of the date of this Opinion.

The Clerk of Court is directed to terminate the motion at docket entry 26.

SO ORDERED.

Dated:      May 3, 2021
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

23