

28 Liberty Street, 30th Floor • New York, NY 10005
Telephone: (212) 300-0375 • Facsimile: (212) 481-1333 • www.fslawfirm.com

May 17, 2024

**VIA CM/ECF**
Hon Katherine Polk Failla, U.S.D.J.
United States District Court for the
Southern District of New York
40 Foley Square, Room 618
New York, New York 10007

        Re:    *Gillett v. Zara USA, Inc. et al.*, No: 1:20-cv-3734(KPF)

Dear Judge Failla,

      We represent the Plaintiff and Opt-In Plaintiffs in the above referenced matter. We write to respectfully request judicial approval of the Parties' settlement agreement attached hereto as **Exhibit ("Ex.") 1**. The agreement resolves the claims of Plaintiff Latrell Gillett and the 479 Opt-In Plaintiffs (collectively "Plaintiffs") for the total amount of $1,250,000.00. As part of this motion, Plaintiffs will request 1/3 in attorney's fees ($416,666.66) plus costs ($30,800.59) from the total settlement amount. For the reasons outlined below, the Court should approve the settlement as a fair and reasonable compromise of Plaintiffs' claims against Defendants.

## BACKGROUND & PROCEDURAL HISTORY

      Fitapelli & Schaffer, LLP ("F&S") was retained by Latrell Gillett who worked for Defendants in multiple New York Stores. On January 14, 2020, F&S sent a pre-suit demand letter on behalf of Plaintiff to Defendants advising them of claims of various wage and hour violations and inviting a pre-litigation response. After the parties were unable to reach a settlement through prelitigation discussions, Named Plaintiff filed this action on May 14, 2020. *See* ECF No. 1. Plaintiffs subsequently filed an Amended Complaint on July 9, 2021. *See* ECF No. 47.

      Plaintiff alleged that Defendants violated the requirements of the FLSA and NYLL because they: (1) failed to provide proper premium overtime pay; (2) failed to provide timely wage payments; (3) failed to pay spread of hours; and (4) failed to provide accurate time of hire notices and wage statements. *See id.* Defendants filed an original answer and an amended answer denying all liability. *See* ECF Nos. 12, 74. Defendants also moved to partially dismiss Plaintiff's complaint, which was denied by the Court on August 10, 2022. *See* ECF No. 69.

      On May 3, 2021, the Court granted Plaintiff's contested motion to certify a FLSA collective action and send notice to other hourly workers, who worked at Zara between May 14, 2017 and July 1, 2019. *See* ECF No. 37. On November 3, 2023, the Parties also stipulated to an additional notice period between September 1, 2019 and January 31, 2020. *See* ECF No. 112. A total of 479

opt-in Plaintiffs have joined this case. The Parties subsequently agreed to attend a private mediation. Prior to mediation, the Parties engaged in extensive formal discovery. Specifically, F&S provided written discovery responses and interrogatories for multiple opt-in Plaintiffs according to the Court's April 3, 2023 order. *See* ECF No. 103. Defendants likewise provided over 30,000 pages of documents, including pay records and time data for all Plaintiffs. Moreover, Plaintiffs served two additional demands for document production, and served Requests for Admission upon Defendants. The parties also held multiple meet-and-confer conferences on discovery disputes, some of which necessitated the Court's intervention. *See* ECF Nos. 101, 103.

On March 11, 2024, the Parties attended an in-person mediation before Carol Wittenberg, Esq. of JAMS. After a full-day mediation, the Parties reached a total gross settlement of $1,250,000.00, inclusive of Plaintiffs' attorneys' fees and costs, the claims administrator's fees and costs, and Named Plaintiff's service award. Over the following weeks, the Parties negotiated and executed the Settlement Agreement, attached hereto as **Exhibit 1**.

The Settlement allocates the net settlement fund to Plaintiffs based on formula which provides for every Plaintiff to receive the overtime damages they are calculate to be owed, including 100% liquidated damages and interest. *See* **Ex. 1**, Settlement Agreement ¶ 3.5(A)(i). Moreover, the formula accounts for the additional claims held by Plaintiffs who worked in New York. *See id.* ¶ 3.5(A)(ii). The Settlement Agreement also provides for a $25,000 service award for the Named Plaintiff. *See id.* ¶ 3.3(A).

## THE SETTLEMENT SHOULD BE APPROVED

Pursuant to *Cheeks v. Freeport Pancake House, Inc.*, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court." *See* 796 F.3d 199, 206 (2d Cir. Aug. 7, 2015); *see also Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Mosquera v. Masada Auto Sales, Ltd.*, No. 09 Civ. 4925, 2011 WL 282327, at *1 (E.D.N.Y. Jan. 25, 2011). "Generally, there is a strong presumption in favor of finding a settlement fair, as the court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Matheis v. NYPS, LLC*, No. 13 Civ. 6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016). "Because *Cheeks* itself did not define the contours of the approval analysis or protocols it envisioned, most district courts within our Circuit turn to the multi-factor test set out in *Wolinsky* to evaluate whether an FLSA wage and hour settlement is fair and reasonable." *Cabrera v. CBS Corp.*, No. 17 Civ. 6011, 2019 WL 502131, at *4 (S.D.N.Y. Feb. 8, 2019).

The court in *Wolinsky* set forth the following criteria for determining whether a proposed settlement is fair and reasonable: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335. Based on the above criteria, the proposed settlement, which provides for the total settlement payment of $1,250,000.00 to the Plaintiffs was achieved after hard fought and arm's-

length negotiations between experienced counsel. Therefore, the settlement is fair and should be approved.

### Factor 1: The Range of Recovery

The first factor weighs in favor of approval. Based on estimated damages calculations for the collective of Plaintiffs, Plaintiffs' range of possible recovery was between $0 and $5,629,301.70 – representing liquidated damages for untimely wage payments ($4,113,963.66), WTPA notice penalties ($728,350.00), and WTPA wage statement penalties ($756,750.00), and damages for failure to pay overtime ($30,238.04). The $1,250,000.00 settlement amount represents approximately 22.22% of possible recovery. Based on the significant and uncertain litigation risks discussed below, the total settlement of $1,250,000.00 is a fair and reasonable result.

### Factors 2 & 3: Avoiding Burdens & Litigation Risk

The second and third factors also favor approval. If the Parties were to continue litigation, the Parties would need to conduct further discovery, including depositions of corporate representatives for Defendants, at least 64 representative opt-in Plaintiffs, and those opt-in Plaintiffs' managers. *See* ECF No. 103 (ordering 64 opt-in Plaintiffs to respond to Defendants' discovery demands). This would require further transactional costs for both sides. In addition, Plaintiffs would file their Rule 23 Class Certification Motion, which Defendants would oppose, all of which would lead to further legal briefings. Moreover, both Plaintiffs and Defendants would likely file fully briefed motions for summary judgement following the close of discovery. As such, further litigation would require significant time and expense.

In addition, both sides face serious litigation risks relating to damages and liability. Unlike in many wage and hour cases, Defendants embraced an unorthodox litigation strategy of proffering offers of judgements to resolve Plaintiffs' FLSA claims, which could have deprived Plaintiffs of the Court's jurisdiction. As a result, while Plaintiffs believe they could have retained jurisdiction, there is a large risk that the Court could have dismissed the case, leaving Plaintiffs stuck with having to file a plethora of state court actions that may be subject to competing decisions. *See* ECF Nos. 118, 126. Moreover, due to the Second Department's decision in *Grant v. Global Aircraft*, Defendants will argue that there is no private right of action for failure to pay manual workers timely pursuant to NYLL 191. To date, one Federal Court has followed *Grant*, and not *Vega*. *See Galante v. Watermark Services IV, LLC*, No.23 Civ. 6227 (FPG), 2024 WL 989704 (W.D.N.Y. Mar. 7, 2024). In addition, another key issue in this case – whether Plaintiffs were all manual workers – is a wholly factual question, requiring significant discovery. If the Court held that Plaintiffs were not manual workers, or accepted any other of Defendants arguments defeating Plaintiffs' claims under NYLL § 191, then Plaintiffs would lose approximately 73% of their potential damages.

Moreover, Defendants indicated that they would challenge Plaintiffs' standing to bring WTPA claims. If Defendants had been successful in dismissing these claims, Plaintiffs' potential recovery would shrink significantly. Defendants also raised a collective bargaining preemption

issue which the Court deferred its ruling on, which represents another risk to Plaintiffs. As a result, these two factors support approval of this settlement.

### Factors 4 & 5: Arm's Length Negotiation & Experience

The fourth and fifth factors also weigh in favor of approval. Plaintiffs' counsel and Defendants' counsel have negotiated at arm's length, as evidenced from the length of the negotiation and litigation process, and both Parties' counsel have significant experience handling wage and hour claims. *See* **Ex. 2**, F&S Qualifications.

In addition, there is no evidence of fraud or collusion, as the Settlement amount represents a significant percentage of Plaintiffs' potential recovery and was obtained after an all-day mediation before an experienced wage and hour mediator, Ms. Wittenberg of JAMS. *See Matheson v. T-Bone Restaurant, LLC*, No. 09 Civ. 4214 (DAB), 2011 WL 6402303, at *1 (S.D.N.Y. Sep. 13, 2011) (citing *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,* No. 06 Civ. 4270, 2008 WL 7863650, at *1 (S.D.N.Y. Dec. 16, 2008) ("the assistance of an experienced mediator, Carol Wittenberg, reinforces that the Settlement Agreement is non-collusive").

### The Court Should Approve the Allocation Formula

The settlement allocation formula is fair and reasonable and should be approved. Specifically, the allocation formula allows all Plaintiffs to recover the full amount they would be owed under the FLSA for unpaid overtime, liquidated damages, and interest. *See* **Ex. 1**, ¶3.5(A)(i). This is the same amount Defendants offered via their Rule 68 offers of judgment. Moreover, the formula provides for a point allocation for each week a plaintiff worked in New York, as only employees in New York hold the NYLL claims. As a result, the points system is based upon the facts of this case and represent a fair allocation of the settlement funds.

### The Court Should Approve The Service Award for Named Plaintiff

The Court should also approve the $25,000.00 service award to the Named Plaintiff, as this award recognizes the service he provided to the collective of Plaintiffs in this case. The Named Plaintiff was instrumental to the initiation and prosecution of this action, and expended considerable time and effort to assist Plaintiffs' Counsel with this case. His services included, but were not limited to: informing counsel of the facts initially and as the case progressed, providing counsel with relevant documents in his possession, encouraging other individuals to participate in the action and settlement, participating in discovery, assisting counsel to prepare for mediation, and reviewing and commenting on the terms of the settlement. The Named Plaintiff also undertook a significant risk that he would be "black balled" in the industry for the sake of all Plaintiffs, as his bringing this case is readily available through simple internet and Google searches. *See Sewell v. Bovis Lend Lease, Inc. et al.*, No. 09 Civ. 6548 (RLE), 2012 WL 1320124, at *14 (S.D.N.Y. April 16, 2012) ("[p]laintiffs litigating cases in an employment context face the risk of subjecting themselves to adverse actions by their employer . . . [and] being blacklisted as 'problem' employees").

The $25,000 service award is also well within the amount of service awards that are routinely approved by Courts in this District. *See, e.g.*, *See Sykes v. Harris*, No. 09 Civ. 8486 (DC), 2016 WL 3030156, at *18-*19 (S.D.N.Y. May 24, 2016) (awarding $30,000 to each class representatives in part because "[i]ncentive awards are appropriate when considering the sacrifice of [p]laintiffs' anonymity"); *Flores v. Anjost Corp.*, No. 11 Civ. 1531 (AT), 2014 WL 321831, at *9 (approving $25,000 service awards each to five individual plaintiffs); *Duchen v. Michael Cetta, Inc.*, No. 06 Civ. 4576 (PAC) (GWG), 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (approving $25,000 service award); *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) (approving $50,000 service awards).; *Matheson v. T-Bone Restaurant, LLC*, No. 09 Civ. 4214 (DAB), 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011) (granting a service award of $45,000 to the class representative); *see also Hurtado v. 183 Food Market Corp.*, No. 20 Civ. 7988 (KPF), 2022 WL 2294074, at *3 (S.D.N.Y. Jun. 24, 2022) (Failla, J.) (awarding class representatives service awards).

### **No Red-Flag Issues Are Present In This Settlement**

The red-flag issues identified in *Cheeks* are not present here. First, the agreement does not have a confidentiality or non-disparagement clause.

The Parties submit that the release here – which is limited only to FLSA and NYLL wage and hour claims for those that endorse their settlement checks – is fair and reasonable. If a Plaintiff does not endorse the settlement check, Defendants will not receive a release. *See* **Ex. 1 ¶ 4.1(A)**. This will be explained to opt-in plaintiffs via a cover letter. *See id.* **¶ 2.5**. Courts in this Circuit regularly approve similar or broader releases. *See Snead v. Interim HealthCare or Rochester, Inc.*, 286 F. Supp. 3d 546, 554 (W.D.N.Y. 2018) (approving a full FLSA and NYLL release that included a further release of ERISA claims); *Ezpino v. CDL Underground Specialists, Inc.*, No. 14 Civ. 3173 (DRH) (SIL), 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017), report and recommendation adopted, No. 14 Civ. 3173 (DRH) (SIL), 2017 WL 3037406 (E.D.N.Y. July 17, 2017) (approving release of wage claims under the FLSA and NYLL).

While Named Plaintiff is providing a general release, he is only doing so in consideration of his service award. *See* **Ex. 1**, **¶ 4.1(C)**. Courts in this Circuit routinely approve of a general release made by a named plaintiff in consideration of a service award in FLSA settlements. *See e.g. Ray v. 1650 Broadway Associates, Inc.*, No. 16 Civ. 9858 (VSB), 2020 WL 5796203, at *3 (S.D.N.Y. Sep. 29, 2020) ("because the general release is consideration for the receipt of Named Plaintiff's Service Awards [the court] find[s] that it is reasonable"); *Schucker v. Flowers Foods, Inc.*, No. 16 Civ. 3439 (KBF), 2018 WL 11321910, at *7 (S.D.N.Y. Apr. 20, 2018) (approving general release in consideration of service award); *Bondi v. DeFalco*, No. 17 Civ. 5681 (KMK), 2020 WL 2476006, at *6 (S.D.N.Y. May 13, 2020) ("broad] releases are deemed acceptable where they serve as consideration for service awards").

Finally, as will be discussed below, F&S' requested attorneys' fees are not excessive. As a result, Plaintiffs respectfully request that the Court find that the settlement agreement is a "fair and reasonable" compromise of their claims against Defendants and approve the settlement.

## THE COURT SHOULD APPROVE THE REQUESTED
## ATTORNEYS' FEES AND COSTS

In accordance with Plaintiffs' professional services-contingency fee agreement with Plaintiffs' Counsel and the Consent to Join forms signed by opt-in Plaintiffs, the Agreement provides that Plaintiffs' Counsel will recover one-third of the settlement ($416,666.66) plus costs ($30,800.59). The amount requested for attorneys' fees is fair and reasonable as it was the fee agreed upon by Plaintiffs in their retainer agreements and opt-in forms, and a contingency fee of one-third is sufficient to account for the risks associated with this representation. Plaintiffs' Counsel has worked without any compensation to date, and Plaintiffs' Counsel's fee has been wholly contingent upon the result achieved. Courts in this district routinely award approve attorneys' fees of one-third in FLSA cases. *See, e.g.*, *Bannerman v. Air-Sea Packing Grp. Inc.,* No. 18 Civ. 06146, 2020 WL 408350, at *1 (S.D.N.Y. Jan. 24, 2020) (approving one third of total settlement as attorneys' fees); *Campos v. Sixtyone Reade Pizza Inc.,* No. 19 Civ. 2414, 2021 WL 3501193, at *1 (S.D.N.Y. Aug. 9, 2021) ("Courts in this District routinely award attorneys' fees based on contingency agreements up to one third of the settlement.").

Through the date of this filing, Plaintiffs' counsel has spent approximately 811.90 attorney hours litigating and settling this action. These hours were compiled from contemporaneous time records maintained by each attorney and administrative staff member participating in the case, and are reasonable. *See* **Ex. 2**. Since November 2014, all of Plaintiffs' counsel's cases have been taken on pure contingency, including all out-of-pocket costs and expenses. Thus, when Plaintiffs' counsel's lawyers spend time on contingency matters, they do so at a significant risk for the firm. For example, in *Rios et al. v. Louya Corp. d/b/a Jacques Brasserie et al.*, No. 14 Civ. 6800 (GHW) (S.D.N.Y.), Plaintiffs' counsel obtained a verdict of $1,044,512.62 after a five-day trial. However, due to the defendants' bankruptcy filings, the plaintiffs and our firm have recovered less than two percent (2%) of the damages and attorneys' fees and costs awarded to them by the court. This highlights the risks associated with wage and hour matters and illustrates that Plaintiffs' counsel stood to gain nothing in the event the case was unsuccessful. Moreover, in Plaintiffs' Counsel's experience, wage and hour cases are inherently high-disk due to often unexpected closings, bankruptcies, and collection issues.

As such, in reviewing Plaintiffs' Counsel's fees in this matter and the risks involved, it is clear that they are both fair and reasonable. Moreover, under the "lodestar" method, the Court "scrutinizes the fee petition to ascertain the number of hours reasonably billed to the [plaintiff] and then multiplies that figure by an appropriate hourly rate." *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Even under the "lodestar" method, Plaintiffs' Counsel's one-third fee award is more than reasonable, as they currently have a lodestar multiplier of approximately 1.23, based on fees of $338,145.00. *See* **Ex. 2**; *see also Castagna v. Madison Square Garden, L.P.*, Case No. 09 Civ. 10211 (LTS) (HP), 2011 WL 2208614, at *10 (quoting *In re Telik*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts"); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 5492998, at *11 (S.D.N.Y. Oct. 2, 2013) (granting multiplier of 7.6 and stating that the class counsel should not be penalized "for achieving an early settlement"); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520 (JLC), 2012 WL 651640, at *4

(S.D.N.Y. Feb. 24, 2012) (granting 6.8 multiplier); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 483 (S.D.N.Y. 2013) (granting 6.3 multiplier); *Hadel et al. v. Gaucho LLC et al.*, No. 15 Civ. 3706 (RLE), 2016 WL 3647600, at *1 (S.D.N.Y. June 30, 2016)) (granting multiplier of 5); *Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531, 2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014) (multiplier of 5.1 "falls within the range granted by courts"); *Flynn v. N.Y. Dolls Gentlemen's Club*, No. 13 Civ. 6530 (PKC) (RLE), 2015 WL 3916161, at * 1 (S.D.N.Y. April 28, 2015) (granting multiplier of 4.5 in a claims made settlement).

Lastly, Plaintiffs' counsel expended $30,800.59 in litigation costs and expenses. *See* **Ex. 2**. These costs are primarily comprised of the expenses of having a private mediation with Carrol Wittenberg ($10,431.01) and administering two rounds of FLSA collective notice with AB Data, a separate administration company ($19,945.00). These costs are commonly reimbursed by courts in this District. *See, e.g., Chamoro v. 293 3rd Café Inc.*, No. 16 Civ. 339 (PAE), 2016 WL 57119799, at *4 (S.D.N.Y. Sept. 30, 2016); *Hui Lan Weng v. Fancy Lee Sushi Bar & Grill, Inc.*, No. 15 Civ. 5737, 2017 WL 5564892, at *3 (E.D.N.Y. Nov. 3, 2017) (holding that court filing fees, process servers, transcripts, travel, and other litigation costs are generally recoverable if they -are necessary for the representation of the client), report and recommendation adopted, 2017 WL 5564593 (E.D.N.Y. Nov. 18, 2017). As such, Plaintiff's Counsels' attorneys' fees are fair and reasonable and should be approved by the court.

\* \* \*

For the above reasons Plaintiff respectfully requests that the Court approve the attached Settlement Agreement.

We thank the Court for its time and consideration.

Respectfully submitted,

*Brian Schaffer*

Brian S. Schaffer

CC: Defendants' Counsel (via ECF)